7 July 1999 

No. 2--98--1085

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

ABEL JALIL ABOUFARISS, ) Appeal from the Circuit Court

) of De Kalb County.

Plaintiff-Appellant, )

) No. 94--L--60

v. )

                                )

)

THE CITY OF DE KALB, CORWIN ) 

THOMAS, THE COUNTY OF DE KALB, ) Honorable

and ELLEN PAULING, ) Douglas R. Engel and

) Roger W. Eichmeier,

Defendants-Appellees. ) Judges, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Abel Aboufariss, filed state and federal actions against defendants, De Kalb County Assistant State’s Attorney Ellen Pauling (Pauling), De Kalb police officer Corwin Thomas (Thomas), the City of De Kalb (City), and the County of De Kalb (County).  Plaintiff now appeals from the trial court orders granting the County’s motion to dismiss and remaining defendants’ respective motions for summary judgment.  We affirm.  

On June 2, 1994, plaintiff filed a complaint against defendants.  The facts in the complaint are as follows.  Plaintiff 
was formerly married to Symone Aboufariss (Symone).  While married, plaintiff and Symone had one child, Tiffany.  On May 6, 1992, the trial court entered a judgment for dissolution of marriage, which incorporated a joint parenting agreement.  The joint parenting agreement contained the following provision regarding the removal of Tiffany from Illinois:

"[e]ither of the parties may remove the children [
sic
] from the state [
sic
] of Illinois for trips or vacation purposes for a period not to exceed two (2) weeks without further leave of Court or consent of the other party, provided the party intending to remove the children [
sic
] shall give the other party reasonable notice of his or her intention to do so, and shall supply the other with information regarding the contemplated period of time outside of the state, and the address and telephone number of where the children [sic] will be during the period of time outside the state [
sic
] of Illinois, and shall permit reasonable telephone communication between the children [
sic
] and the parent who is not with the children [
sic
]."  

Plaintiff alleged that on or about May 29, 1993, he informed Symone that he would be taking Tiffany to visit friends in the Boston area.  On June 5, 1993, plaintiff went to Symone’s home to pick up Tiffany for the purpose of taking her to Boston.  Plaintiff provided his brother with a contact phone number and address in Boston and instructions to forward this information to Symone.  

On June 6, 1993, at approximately 1:17 p.m., Officer Thomas was dispatched to Symone’s residence.  Symone informed Thomas that plaintiff picked up Tiffany the previous morning and agreed to return her by 8 a.m. on June 6.  When plaintiff failed to return Tiffany by that time, Symone attempted to reach plaintiff by telephone at his Melrose Park, Illinois, residence.  She also attempted to reach plaintiff at an out-of-state telephone number that plaintiff’s sister-in-law provided her.  Symone advised Thomas that plaintiff did not inform her that he was taking Tiffany out of the state.  She also told Thomas that plaintiff threatened to take Tiffany to Morocco if the police were involved.  Plaintiff alleged that Symone’s representations to Thomas were false.  

According to plaintiff, Thomas’s investigation revealed that plaintiff had previously notified Symone of his plans to take Tiffany to Boston and that plaintiff had provided Symone with the Boston telephone number and address.  Thomas learned that on two occasions plaintiff contacted Symone from Boston.  Thomas was also aware that plaintiff and Tiffany intended to return to Chicago and  knew their flight number as well as their expected arrival time.  Plaintiff further alleged that, notwithstanding this information, Thomas contacted the Boston police department and advised a police sergeant that plaintiff violated the child abduction statute (720 ILCS 5/10--5 (West 1992)) and that the De Kalb police department was in the process of obtaining an arrest warrant.  

Thomas also contacted Pauling, an assistant State’s Attorney, to assist in the investigation and in obtaining an arrest warrant.  Plaintiff alleged that, in drafting the complaint-for-arrest warrant, both Pauling and Thomas knew that plaintiff had notified Symone that he would be taking Tiffany to the Boston area, that plaintiff had provided Symone with a contact number and address, that Symone had talked to plaintiff and Tiffany, that plaintiff and Tiffany were at the airport to return to Chicago, and that Symone knew the return flight information.  

Plaintiff alleged that both Pauling and Thomas knew that the statements made in the complaint-for-arrest warrant were false and failed to advise the trial court that plaintiff had previously notified Symone of his plans to take Tiffany to the Boston area and that plaintiff and Tiffany were at the airport intending to return to Chicago.  

After the trial court issued a warrant for plaintiff’s arrest, plaintiff was arrested at the airport in Boston and incarcerated for 10 days.  Following plaintiff’s preliminary hearing on the child abduction charge, the trial court made a finding of no probable cause.  Plaintiff alleged that while incarcerated he suffered personal and pecuniary injury.  Count I of plaintiff’s complaint was based on malicious prosecution and false arrest and was directed against all defendants.  Count II alleged that Pauling and Thomas violated plaintiff’s civil rights pursuant to section 1983 of the Civil Rights Act of 1871 (42 U.S.C.A. §1983 (West 1994)).  Counts III and IV were directed against the City and County, respectively, and asserted municipality liability pursuant to section 1983.  Counts V and VI were based on state and federal conspiracy claims directed against all defendants.  Counts VII and VIII alleged defamation and invasion of privacy, respectively, against all defendants.  

On July 28, 1994, Pauling and the County filed a motion to dismiss plaintiff’s complaint pursuant to sections 2--615 and 2--

619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 619(a)(9) (West 1994)).  The City also filed a motion to dismiss plaintiff’s complaint pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 1994)).  The trial court dismissed counts I, IV, V, VI, VII, and VIII against the County only.

The remaining defendants filed motions for summary judgment, which the trial court granted on
 July 24, 1998.  In granting the motions for summary judgment, the trial court made several findings of fact and concluded that Pauling’s and Thomas’s actions fell within the protections of qualified immunity.  Thereafter, plaintiff filed this timely appeal.  Plaintiff raises three principal contentions on appeal: (1)  the trial court erred in making specific findings of fact at the summary judgment stage, particularly when those findings involved disputed issues of material fact; (2) the trial court erred in granting summary judgment on the basis that there was probable cause to believe that plaintiff committed child abduction; and (3) the trial court erred in granting summary judgment in favor of Pauling and Thomas based on qualified immunity.  

Preliminarily, we address defendants’ argument that plaintiff’s statement of facts violates Supreme Court Rule 341 (177 Ill. 2d R. 341).  Rule 341(e)(6) provides that the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal."  177 Ill. 2d R. 341(e)(6).  Plaintiff’s statement of facts contains argumentative facts without proper citation to the record.  Additionally, plaintiff incorporates facts that are not necessary to the disposition of the appeal.  Accordingly, we shall not consider those facts that we deem violative of Rule 341(e)(6).  

Plaintiff’s first contention on appeal is that the trial court committed reversible error in making findings of fact when granting the motions for summary judgment.  Plaintiff’s argument rests primarily on his position that the trial court’s findings of fact related to disputed issues of material facts and that, therefore, summary judgment was inappropriate.  We are puzzled as to why the trial court, in ruling on the motions for summary judgment, made "findings of fact."  Notwithstanding the "findings of fact," we may affirm on any ground supported by the record, regardless of the  basis for the trial court’s decision and the accuracy of its reasoning.  
Wood v. Wood
, 284 Ill. App. 3d 718, 722 (1996).  The lower court’s judgment, not its reasoning, is the subject of our review.  
Makowski v. City of Naperville
, 249 Ill. App. 3d 110, 115 (1993).  In light of the above well-settled principles, our review of the record, and our resolution of the remaining issues, we conclude that the trial court’s "findings of fact" do not serve as a sufficient basis to warrant reversal of its order granting summary judgment.   

PROBABLE CAUSE

We next address whether the trial court erroneously concluded that there was probable cause to believe that plaintiff committed child abduction.  Plaintiff maintains the trial court improperly granted defendants’ motions for summary judgment because there existed a disputed issue of material fact regarding whether there was probable cause.  Plaintiff argues that Pauling and Thomas did not possess a good-faith, objectively reasonable belief that there was probable cause that the plaintiff violated the child abduction statute (720 ILCS 5/10--5 (West 1992)).  He asserts that, during the hearing on the complaint-for-arrest warrant, Pauling and Thomas deliberately withheld the following facts from the trial court:  plaintiff previously notified Symone of his intentions to take Tiffany to Boston; plaintiff told Symone that he and Tiffany were at a Boston airport waiting to board a return flight to Chicago and provided her with flight information; plaintiff could not fly directly from Boston to Morocco; and Symone intended to move to Florida with Tiffany.  Additionally, plaintiff maintains that, pursuant to section 5(c)(1) of the child abduction statute (720 ILCS 5/10--5(c)(1) (West 1992)), having custody of the child constitutes an affirmative defense to child abduction, which precludes the finding of probable cause.  Because plaintiff was awarded joint custody of Tiffany, he maintains that there was no probable cause to believe that he committed child abduction.    

Before we assess the merits of plaintiff’s argument, we briefly outline the standards governing motions for summary judgment.  A trial court properly grants summary judgment if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1996).  The record and all reasonable inferences drawn therefrom must be  construed in favor of the nonmovant.  
Urban v. Village of Lincolnshire
, 272 Ill. App. 3d 1087, 1094 (1995).   Reversal is  warranted only if, after reviewing the evidence, there exist issues of material fact or the judgment was based on an error in law.  
Burse v. CR Industries, Inc.
, 288 Ill. App. 3d 48, 52 (1997).  We review the entry of summary judgment 
de novo
.  
Harris Bank v. City of Geneva
, 278 Ill. App. 3d 738, 741 (1996).  The issue of probable cause in section 1983 claims is properly resolved at the summary judgment stage when undisputed facts support the finding of probable cause. See 
Maxwell v. City of Indianapolis
, 998 F.2d 431, 434 (7th
 Cir. 1993). 

The existence of probable cause constitutes an absolute bar to a section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.  
Schertz v. Waupaca County
, 875 F.2d 578, 582 (7th Cir. 1989).  However, if the finding of probable cause is based on "the defendant’s intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of an arrest."  
Schertz
, 875 F.2d at 582.  The existence of probable cause is measured by an objective standard, namely, whether, under the facts known to an arresting officer, a prudent person would believe a crime had been or was being committed.  
United States v. Reis
, 906 F.2d 284, 289 (7th
 Cir. 1990). 

The warrant for plaintiff’s arrest charged him with child abduction, which was based on plaintiff’s intentional violation of the terms of a court order, namely, the removal of Tiffany to Massachusetts without providing reasonable notice to Symone.  A person commits child abduction when he "[i]ntentionally violates any terms of a valid court order granting sole or joint custody *** [by] removing the child from the jurisdiction of the court."  720 ILCS 5/10--5(3)(b)(1) (West 1992).  

We determine that the issue of probable cause was not a disputed issue of material fact to preclude summary judgment.  The undisputed evidence in the record supports the conclusion that, based on the information known to Pauling and Thomas at the time they prepared the complaint-for-arrest warrant, there was probable cause to believe that plaintiff had committed the offense of child abduction.  Portions of Thomas’s October 28, 1993, and June 17, 1996, depositions were filed in support of Thomas's and the City’s motion for summary judgment.  During the June 17, 1996, deposition, Thomas testified that on June 6, 1993, at approximately 1 p.m., he received a dispatch to go to Symone’s residence.  When he arrived at the residence, Symone informed him that on June 5 she allowed plaintiff to take Tiffany to his residence in Melrose Park and return her on the morning of June 6.  Symone stated that when Tiffany did not return that morning she attempted to contact plaintiff, but she was unsuccessful.  She then tried to call plaintiff’s brother.  Symone spoke with plaintiff’s sister-in-law, who provided her with a telephone number to contact plaintiff.  When she called the number, she was unable to contact plaintiff.  She learned that the telephone number was a Massachusetts number.  She told Thomas that a few weeks prior to this incident plaintiff had expressed an interest in taking Tiffany to Massachusetts.  

She also expressed concern that plaintiff would take Tiffany out of the country.  Thomas explained that this concern was based on plaintiff’s reaction to Symone’s plans to relocate to Florida.  Symone indicated that plaintiff was a foreign national and that while they were married they lived in Morocco for some time.  Symone also told Thomas that plaintiff had recently taken photos of Tiffany and that she believed plaintiff was trying to get a passport made for Tiffany.  She explained that plaintiff had access to an airline pass because his brother was connected with an airline. 

After Thomas spoke with Symone, he took copies of the judgment for dissolution of marriage, joint parenting agreement, and divorce decree and spoke with Sergeant James Kayes.  Shortly after speaking with Kayes, Thomas spoke with Pauling.  Afterwards, Thomas learned that the Melrose Park police contacted a neighbor who lived near plaintiff’s alleged residence.  However, the neighbor did not recognize plaintiff’s name.  Thomas subsequently contacted a Cook County dispatcher to send an officer to Des Plaines to talk to plaintiff’s brother and sister-in-law.  The Cook County sheriff’s police reported that plaintiff’s brother had no information.  Thomas then attempted to ascertain the address from the Massachusetts number that Symone provided him, but he was unable to retrieve a corresponding address.

Thomas subsequently received a phone call from Symone, who advised him that she had been in contact with plaintiff.  Symone had two conversations with plaintiff.  During the first conversation, she believed that plaintiff was in a motel.  She told plaintiff that she was upset with him for taking Tiffany and that she had contacted the police.  During the second conversation, plaintiff confirmed that he was in Massachusetts.  He also told Symone that he was at an airport in Massachusetts and threatened to disappear with Tiffany if she did not call off the police.  Symone told Thomas that her daughter was upset and crying.  After the second conversation with Symone, Thomas contacted Pauling, and she arrived at the De Kalb police department.  At about the same time, Thomas and Kayes called the Boston police department and ascertained the address to the Massachusetts telephone number.  

Thomas admitted that, during his investigation, he was aware that plaintiff agreed to place Tiffany on a plane to return to Illinois if the police were instructed not to take further action.  When Pauling arrived at the police department, Thomas and Kayes discussed with Pauling all that they learned during their investigation.  Pauling assisted Thomas in completing the complaint-for-arrest warrant.  After completing the complaint, Pauling and Thomas presented it to the trial court.  Thomas testified that he did not tell the trial court that plaintiff gave Symone’s mother Tiffany’s flight number.  He testified that he did not recall having any information about a flight number.  Following the hearing on the complaint for arrest warrant, the trial court issued an arrest warrant.  

Once the trial court signed the warrant, it was faxed to Boston.  Thomas testified that in the interim Sergeant Connelly of the Boston police department 
obtained a flight number and departure time.  Kayes's investigation report 
and affidavit indicated that he advised Connelly of the warrant for plaintiff’s arrest at 4:58 p.m.  At 5:05 p.m., Kayes received a call from an American Airlines representative who informed him that a reservation was made for Tiffany on a particular flight to Chicago and that she was traveling with her uncle, an employee of American Airlines. 

During Pauling’s deposition, she testified that Thomas first contacted her to inform her that an investigation was in progress.  She advised him to complete the investigation and attempt to locate plaintiff.  Pauling’s next involvement with the investigation was after she received a second phone call from Thomas.  At this point, she went to the police department, read portions of the marital settlement agreement and joint parenting agreement relating to custody and visitation, and reviewed the child abduction statute.  Thereafter, she assisted Thomas in completing the complaint-for-

arrest warrant.  Pauling testified that plaintiff violated the court order by failing to give reasonable notice and that, based on the information she had available, she believed that there was probable cause.  When she appeared before the trial court, she was not aware that plaintiff and Tiffany were at the airport with tickets to board a flight to Chicago.    

These facts establish that Thomas and Pauling held an objectively reasonable belief that plaintiff had committed child abduction.  The record does not support plaintiff’s assertion that Pauling and Thomas deliberately withheld information from the trial court.  Thus, the existence of probable cause serves to bar plaintiff’s section 1983 claims.    

We note that the trial court’s subsequent finding that there was no probable cause for plaintiff’s arrest is not significant to the probable cause analysis.  See 
Forman v. Richmond Police Department
, 104 F.3d 950, 962 (7th
 Cir. 1997) (subsequent determination on the issue of probable cause is immaterial to whether officer acted reasonably in light of facts known at the time of offender’s arrest).  Additionally, the assertion of an affirmative defense does not negate the finding of probable cause for purposes of a section 1983 analysis.  
Humphrey v. Staszak
, 148 F.3d 719, 724 (7th
 Cir. 1998).  
Plaintiff also devotes much time in his brief arguing that, because his testimony contradicts what Symone told the police, the issue of probable cause is disputed.  However, the offender’s perception of the circumstances is immaterial because probable cause is based on the arresting officer’s knowledge of the facts at the time.  
Reis
, 906 F.2d at 289.  Moreover, whether Pauling and Thomas knew prior to the hearing on the complaint-for-arrest warrant that plaintiff and Tiffany were waiting to board a return flight to Chicago is irrelevant to whether there was probable cause to believe that plaintiff violated the court order by failing to provide Symone with reasonable notice that he was taking Tiffany to Massachusetts.

ABSOLUTE IMMUNITY

Pauling and Thomas are also shielded from section 1983 liability because they are entitled to immunity.  Plaintiff argues that a prosecutor is not afforded absolute immunity when advising police officers on probable cause or when performing investigative functions.  Plaintiff maintains that because Pauling acted in an investigative role she should not be entitled to absolute immunity.  Additionally, plaintiff maintains qualified immunity is inapplicable to both Pauling and Thomas because they deliberately or recklessly argued the existence of probable cause and withheld facts from the trial court.  

In response, Pauling maintains that absolute immunity operates to bar plaintiff’s section 1983 claims.  Alternatively, she asserts that qualified immunity shields her from liability against the federal claims.  Pauling also argues that the doctrine of public official immunity affords her protections against plaintiff’s state law actions.  Thomas maintains that his actions are protected by the doctrine of qualified immunity.  

Although the trial court concluded that Pauling was afforded qualified immunity, we find that Pauling’s actions are protected by absolute immunity.  
Kalina v. Fletcher
, 
   
 U.S. 
   
,  
   
 L. Ed. 2d 
   
, 118 S. Ct. 502, 508 (1997), controls the disposition of this issue.  In 
Kalina
, a prosecutor filed an information, a motion for an arrest warrant, and an accompanying certification, which summarized the evidence establishing the grounds for probable cause.  The prosecutor personally attested to the truth of the facts set forth in the certification under penalty of perjury.  The trial court found probable cause and issued an arrest warrant.  
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 505
.  Respondent was arrested and incarcerated.  However, the charges against respondent were subsequently dismissed.  
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 505
.  The prosecutor’s certification contained two factual inaccuracies.  Following the dismissal of respondent’s charges, respondent brought a section 1983 action against the prosecutor.  The prosecutor filed a motion for summary judgment, asserting absolute immunity.  The district court denied the motion and the appellate court affirmed.  
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 505
.  The Supreme Court observed that, in determining whether immunity applies, courts examine " 'the nature of the function performed, not the identity of the actor who performed it.' " 
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 508,
 quoting 
Forrester v. White
, 484 U.S. 219, 229, 98 L. Ed. 2d 555, 566, 108 S. Ct. 538, 545 (1988).  It concluded that a prosecutor’s acts relating to the preparation and filing of a motion for an arrest warrant are afforded absolute immunity.  
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 509.  Specifically, the prosecutor’s drafting of the certification, the selection of particular facts to support the finding of probable cause, the decision that the evidence established probable cause, the decision to file charges, and the presentation of the documents to the trial court fell within the protections of absolute immunity.  
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 509-10
.  Nevertheless, the Supreme Court determined that the act of certifying under penalty of perjury constituted a function of a witness rather than a prosecutor.  
Kalina
, 
   
 U. S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 510.  Thus, to the extent that the prosecutor performed the function of a complaining witness, she was not afforded absolute immunity.  
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 510.      

Here, Pauling’s acts fell within the traditional roles of a prosecutor.  She advised Thomas to complete the investigation and attempt to locate plaintiff.  She went to the police department, read the portions of the marital settlement agreement and the joint parenting agreement relating to custody and visitation, and reviewed the child abduction statute.  She also assisted in drafting the complaint-for-arrest warrant and attended the probable cause hearing.  With the exception of performing administrative tasks such as handing the trial court the marital settlement agreement and the joint parenting agreement and copying the arrest warrant, she did not participate in the hearing on the complaint for arrest warrant.  Rather, questions during the hearing were directed at Thomas.  She did not have any further involvement in the case.  We believe that absolute immunity applies to protect a prosecutor when performing these functions, and, unlike the prosecutor in 
Kalina
, Pauling did not sign a certification document, which would have transformed the nature of her prosecutorial function.  See 
Kalina
, 
   
 U.S. at 
   
, 
   
 L. Ed. 2d at 
   
, 118 S. Ct. at 509-10.  Accordingly, absolute immunity operates to bar the section 1983 claims against Pauling.  

In addition to absolute immunity barring the federal claims, Pauling is also protected by public official immunity against plaintiff’s state law claims.  The doctrine of public official immunity affords state officials and employees full protection for acts performed within their official discretion.  
People v. Patrick J. Gorman Consultants, Inc.
, 111 Ill. App. 3d 729, 731 (1982).  To be protected, a public official’s actions must fall within the scope of the official’s authority and should not be the result of "malicious motives."  
Hanzel Construction, Inc. v. Wehde & Southwick, Inc.
, 130 Ill. App. 3d 196, 200 (1985).  A prosecutor acting within the scope of her prosecutorial duties enjoys immunity from civil liability, the same immunity afforded to the judiciary.  
Coleson v. Spomer
, 31 Ill. App. 3d 563, 567 (1975).  

Because we have already concluded that Pauling’s actions fell within the scope of traditional prosecutorial functions and plaintiff’s state law claims against Pauling were based on the same factual allegations contained in the section 1983 claims, public official immunity operates to bar the state law claims against Pauling.  Contrary to plaintiff’s assertion, there is no evidence in the record to support plaintiff’s argument that Pauling knowingly or recklessly withheld evidence from the trial court.

QUALIFIED IMMUNITY

Qualified immunity operates to bar the section 1983 claims against Thomas.  In actions brought against governmental officials pursuant to section 1983, governmental officials may raise qualified immunity as an affirmative defense.  
Gomez v. Toledo
, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 577, 100 S. Ct. 1920, 1924 (1980); 
Forman
, 104 F.3d at 957
.  Generally, governmental officials who perform discretionary functions are protected against civil liability unless "their conduct *** violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  
Harlow v. Fitzgerald
, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410
, 102 S. Ct. 2727, 2738 (1982).  To determine whether qualified immunity applies to a defendant in section 1983 actions, courts examine whether the defendant’s conduct violated plaintiff’s constitutional rights and whether the rights were clearly established at the time of the violation. 
 
Montville v. Lewis
, 87 F.3d 900, 902 (7th
 Cir. 1996).  A negative response to either inquiry invokes the protections of qualified immunity.  See
 Montville
, 87 F.3d at 902.  Once the defendant raises the defense of qualified immunity, the plaintiff carries the burden of demonstrating the violation of a clearly established right.  
Forman
, 104 F.3d at 957-58.

Police officers are afforded qualified immunity if "a reasonable officer, in applying for a warrant, could have believed that there was probable cause to support the application."
  
Schertz
,
 
875 F.2d at 583, citing  
Malley v. Briggs
, 475 U.S. 335, 344-45, 89 L. Ed. 2d 271, 280-81, 106 S. Ct. 1092, 1097-98 (1986).  The basis for plaintiff’s section 1983 claims against Thomas rests on plaintiff’s argument that the arrest violated his fourth amendment rights because Thomas did not have probable cause to arrest him for child abduction.  In light of our earlier finding that Thomas had probable cause to believe that plaintiff committed child abduction, plaintiff has failed to establish a violation of his constitutional rights.  Because plaintiff has not demonstrated a constitutional violation, we need not reach the second part of the qualified immunity analysis.  Accordingly, qualified immunity shields Thomas against section 1983 liability. 

In a rather cursory fashion and absent citation to any authority, plaintiff argues that neither Thomas nor the City is afforded immunity against plaintiff’s state law claims because Thomas intentionally withheld facts from the trial court.  Plaintiff fails to support this argument with citation to authority as required by Supreme Court Rule 341(e)(7) (177 Ill. 2d. 341(e)(7)).  Argument absent citation to any authority results in waiver of plaintiff’s argument.  See 
Ollivier v. Alden
, 262 Ill. App. 3d 190, 199 (1994).

CLAIMS AGAINST THE COUNTY OF DE KALB

Plaintiff also argues that the trial court erroneously granted the County’s motion to dismiss.  He maintains that his complaint pleaded with sufficient specificity violations of section 1983 against the County pursuant to the requirements of 
Monell v. Department of Social Services of the City of New York
, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).  According to plaintiff, several policies of De Kalb County caused Pauling’s misconduct, thereby depriving plaintiff of his constitutional rights.  Specifically, plaintiff argues that the policies encourage prosecutors to procure arrests absent probable cause and to deliberately fail to advise courts of the lack of probable cause when seeking to obtain arrest warrants.  In response, the County asserts that plaintiff’s claim against it must fail because plaintiff has not suffered constitutional harm as a result of Pauling’s acts.

The following standards govern a motion to dismiss pursuant to sections 2--615 and 2--619 of the Code (735 ILCS 5/2--615, 619 (West 1994)).  Section 2--615 of the Code allows for dismissal for "defects in [the] pleadings" when the complaint is "substantially insufficient in law."  735 ILCS 5/2--615 (West 1994).  In other words, a section 2--615 motion to dismiss attacks the legal sufficiency of the complaint (
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86 (1996)) and is solely based on defects appearing on the face of the complaint (
Becker v. Zellner
, 292 Ill. App. 3d 116, 122 (1997)).  When reviewing a section 2--615 dismissal, a reviewing court must determine whether the allegations in the complaint, when viewed in the light most favorable to the plaintiff, "sufficiently set forth a cause of action on which relief may be granted."  
Brock v. Anderson Road Ass’n
, 287 Ill. App. 3d 16, 20 (1997). 

In contrast, a section 2--619 motion to dismiss is properly granted where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2--619(a)(9) (West 1994).  The movant "admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim."  
Brock
, 287 Ill. App. 3d at 21.  
In determining whether to grant a section 2--615 or a section 2--619 motion to dismiss, a court must accept as true all well-pleaded facts and reasonable inferences drawn therefrom. 
Bryson
, 174 Ill. 2d at 86-87.  Dismissal on the pleadings is  proper when no set of facts can be proved which would entitle the plaintiff to recovery.  
Bryson
, 174 Ill. 2d at 86-87; 
Reese v. Forsythe Mergers Group, Inc.
, 288 Ill. App. 3d 972, 982 (1997).  We review the grant of either a section 2--615 or a section 2--619 motion to dismiss 
de novo
.  
Kedzie & 103rd
 Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993).    

 To successfully state a claim against a governmental body pursuant to section 1983, a plaintiff must establish that he has suffered a violation of a constitutional right and that the injury was caused by an official policy of the governmental body.  
Monell
, 436 U.S. at 694, 56 L. Ed. 2d at 638
, 98 S. Ct. at 2037-38.  Because a governmental body cannot be liable for the conduct of one of its officers absent a showing that the officer’s conduct inflicted constitutional harm (
City of Los Angeles v. Heller
, 475 U.S. 796, 799, 89 L. Ed. 2d 806, 810,
 106 S. Ct. 1571, 1573 (1986)), 
and, as discussed above, plaintiff has not established that he has suffered a constitutional deprivation, the trial court properly dismissed plaintiff’s complaint against the County.  Plaintiff also asserted section 1983 violations 
against the City.  For the same reasons, the trial court’s grant of summary judgment in favor of the City was also proper.                

Plaintiff does not challenge the propriety of the trial court’s order relating to the dismissal of his state law claims against the County.  Accordingly, we need not consider this issue.      For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.  

Affirmed.  

INGLIS and McLAREN, JJ., concur.