(No. 26599.—

The People *ex rel.* Edith M. Schreiner *et al.,* Appellants, *vs.* Thomas J. Courtney *et al.,* Appellees.

*Opinion filed May 13, 1942—Rehearing denied Sept. 17, 1942.*

Thomas Tighe, and Charles Liebman, for appellants.

Thomas J. Courtney, State's Attorney, Winston, Strawn & Shaw, Herbert Decker, David L. Golden, and Seymour R. Blankstein, (Marshall V. Kearney, Jacob Shamberg, Harold L. Reeve, William B. Garrett, James H. Cartwright, and Paul H. Moore, of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

This is a taxpayer's suit brought by the People of the State of Illinois *ex rel.* Edith M. Schreiner and Elizabeth S. Tighe against the State's Attorney and assistant State's

Attorney of Cook county, the owner and purchaser of certain property, and the president and board of county commissioners of Cook county, and former owners in the chain of title, to recover for the People the difference between the amount realized in cash from a tax foreclosure sale, and the total amount of the tax delinquency, with interest.

The jurisdiction of this court is questioned by appellees. The case is somewhat similar in principle to *People* v. *Holten,* 259 Ill. 219. In that case a suit in the name of the People was brought by a taxpayer to recover from the city treasurer and his bondsmen certain amounts retained as commissions for the collection of taxes, and not turned over to the city of East St. Louis. The treasurer retained the commission in addition to his salary, and the court made the distinction, upon a motion to dismiss, between the question as to how revenue should be divided, and the question of whether the money involved in the case was revenue, saying: "So far as the question whether a suit relates to the revenue is concerned, there is no distinction between money in the hands of a tax collector claimed as revenue, and the same money demanded from the original taxpayers as revenue. * * * If it is not revenue plaintiff cannot succeed in the action, but if it is revenue it belongs in the treasury of the city." The situation here, while different, involves the same principle. If the action charged to have been committed by appellees is responsible in depriving the people of revenue which but for such action it would have collected, it is no less revenue when collected from appellee than when collected from the taxpayer. If there is a liability of appellees for taxes it can be enforced by a taxpayer. (*People* v. *Holten, supra; Jones* v. *O'Connell,* 266 Ill. 443; *People* v. *Holten,* 287 id. 225.) Since the question of deciding whether there is a liability set out in the complaint will necessarily determine whether appellees should pay taxes which become lost through their action, and if collectible, would be revenue, the case comes within the principle of

*People* v. *Holten,* 259 Ill. 219, requiring us to consider the facts on direct appeal.

The case was brought by plaintiffs as taxpayers against three groups connected with the purchase of a piece of real estate on which the taxes were delinquent, and the clearing of the title of such taxes by a tax foreclosure proceeding. The first group consists of the former owners of the property, the present owner, purchaser and escrow holder of deed and money and attorney connected with the transaction. The second group consists of the State's Attorney and the assistant State's Attorney, who filed a tax foreclosure suit in the name of the people, which ended in a decree, sale and approval, and a redemption from the tax lien on the property. Included in this group are the official bondsmen of the State's Attorney. The third group represents the board of county commissioners of Cook county both individually and as members of the board. The actions of all of these groups are woven together in a complaint without charging knowledge or notice of the acts of one group being known to those of the others, and, by a statement of alleged duties imposed by law upon the second and third groups, liability is said to exist upon the part of all of them to see that a proper sale at tax foreclosure sale realizes the full amount of the tax, when the property has such value.

Disregarding conclusions drawn by the pleader, briefly the complaint charges the plaintiffs are taxpayers in Cook county and bring suit on behalf of the people; that there was a certain tract of land owned by Mildred F. Lindop as trustee for John Cummings Lindop, which she acquired in 1937, when the assessed value was $13,974 with tax delinquent thereon from 1931; that she contracted to sell said property in 1939 to the Chicago Rivet & Machine Company for $30,000 subject to the 1940 taxes, and deposited a warranty deed in escrow, subject to the completion of title; that at this time the delinquent taxes with

interest amounted to $16,245.09; that said parties and their attorneys agreed they would request the State's Attorney to bring a tax foreclosure suit, and at the sale have the property purchased by a nominee of the Chicago Rivet & Machine Company, and when the certificate of sale had issued have the latter redeem; and that said parties did employ attorneys, and did induce the State's Attorney to start a foreclosure proceeding, with the understanding there would be a bid of at least $5500 at the sale. This constitutes the substance of the allegations against the first group. There is no claim or allegation that the State's Attorney or the members of the county board had any knowledge of the transactions of the first group, although the complaint avers, if discovery is allowed, they may prove it during the course of the discovery.

The complaint as to the other parties charges the State's Attorney did file a petition to foreclose the lien of taxes upon the property; that answers were filed by the owners and other parties; that a decree of foreclosure for the sale of said delinquent taxes was entered December 18, 1940; that the deed from Lindop to the Chicago Rivet & Machine Company was filed for record December 20, 1940, from which it is alleged the State's Attorney had full knowledge and notice of the value of the property; after advertisement according to law the property was sold at public sale for $5500 to one George Ott; that the State's Attorney thereupon notified the board of commissioners of Cook county of said sale, in writing, and advised them when the matter would be presented to the court for approval or disapproval, and informed them of the amount of the sale, and the amount of the unpaid taxes, together with the interest and penalties. The court approved the sale February 3, 1941, and February 4 the board of county commissioners concurred in the approval of sale of this particular property and *29 other like cases*. After the report of sale had been approved by the court, and the cer-

tificate of sale issued it was redeemed from such sale by the then owner Chicago Rivet & Machine Company February 13, 1941, and later a proceeding was brought and a decree entered which enjoined the county clerk and the State's Attorney from collecting any deficiency arising out of such sale from said property, and decreed the property discharged of the lien of taxes.

Up to this point appellees disclaim that the State's Attorney or his assistant, or the board of county commissioners, had any knowledge of the arrangements between the owners and the purchasers of the property, but say that upon information and belief such knowledge would appear if discovery was decreed. The complaint also charges it is the duty of the State's Attorney to use skill in the conduct of tax foreclosure proceedings, and that he or his assistants should make investigations of the values, and, if the property is worth more than the amount of tax against it, should notify the board of county commissioners, and as a part of his official duties in such case he should recommend the county to bid the property in. It is further alleged it is the duty of the board of county commissioners to investigate the value of all properties put up for tax foreclosure sale, and in this case it was the duty of the board of county commissioners to advise the State's Attorney to have the particular sale disapproved and the property resold, and that said State's Attorney and his assistants and the board of county commissioners failed in their duty and allowed said sale to be approved, and by said proceeding caused a loss of taxes of $10,745.09.

It is also alleged the State's Attorney was derelict in that he did not pray for a deficiency judgment against Lindop, and did not make all of the prior owners parties defendant, and did not file a separate count asking judgment against Lindop, and that the State's Attorney has given an official bond, and that because he has breached

his official duty such bondsmen are liable. The general prayer is to enter a decree rendering the property so sold still liable for taxes to the extent of $10,745.09, or in the alternative that all of the parties, consisting of the three groups, be held guilty of fraud and conspiracy and personally liable to make up and pay the taxes so alleged to have been lost. All parties appeared and filed motions to strike the complaint and dismiss the cause for want of equity. This motion was allowed by the circuit court, and hence the appeal.

The most outstanding feature of appellants' case is their failure to present a theory under which appellees are liable under the allegations of the complaint. The general charge of the complaint goes to the effect that everybody connected with a tax foreclosure sale is a guarantor for the full amount of taxes and delinquencies if the proceeding results in a deficiency and it can be established the property was worth more than the taxes.

No cause of action is stated as to the first group. The Chicago Rivet & Machine Company was not required to purchase the property of Lindop until the delinquent taxes were cleared. It was not liable for any taxes; the owner had not paid the taxes, but a tax foreclosure decree would fix a lien upon the property which, upon redemption by an owner not personally liable, would leave the property free from the lien of delinquent taxes. (*French* v. *Toman,* 375 Ill. 389.) The liability of the property during the foreclosure for the full amount of the unpaid taxes, and the right to recover a deficiency against the prior owners by suit was not disturbed or lost. As far as the owner was concerned there was nothing unlawful in agreeing to have the property foreclosed at tax sale, nor is there any requirement of law that he bid an amount sufficient to discharge the whole delinquent tax at such sale, as he was not personally liable for taxes accruing prior to 1937, and

certainly nothing is shown by the complaint as to why the purchaser at such sale should have the property subject to the lien of the balance of the delinquent taxes.

The gist of the contention against this group is that a purchaser agreeing to pay more for a tract of real property than the amount of delinquent taxes standing on the books against it is liable with the seller to see that all taxes are paid, or have his purchase subject to the unpaid balance of the taxes. This is directly contrary to our holding in *French* v. *Toman, supra.* There is no claim made that anyone agreed to do more than have the necessary public authorities bring a proceeding according to law to sell the property at tax foreclosure. There was no agreement to suppress bidding, or to do anything that would hinder any interested party from attending the sale and paying any amount that the value of the property and the risks contingent upon a tax purchase would justify. No cause of action is stated against the first group in the complaint.

The claim made against the State's Attorney is difficult to understand, and is supported by no citations of authority. It is alleged that the State's Attorney had no knowledge of the private arrangements between the seller and purchaser and other persons of the first group. It is clear other tax foreclosure proceedings were pending, as the report of the State's Attorney to the board of commissioners of Cook county of this sale shows it was accompanied by a report of 29 other like foreclosures. All of the requirements of law were followed, and the duty of the State's Attorney in this respect scrupulously observed. To the contention that it was the duty of the State's Attorney to go out and investigate the value of each property upon which a tax foreclosure proceeding is commenced, it is sufficient to say section 5 of the act in relation to State's Attorneys (Ill. Rev. Stat. 1939, chap. 14, par. 5) specifically prescribes the duties of a State's Attorney, and such is not among those found in the statute.

To the claim that the State's Atorney should advise the board of commissioners they should bid in property at tax foreclosure sale when the bid is insufficient to satisfy the amount of the taxes, the answer is that nowhere is there such duty prescribed by law, nor would there be any obligation upon the part of the board of commissioners to follow such advice. This is a matter which comes wholly within the discretion of the county board as a municipal agency. The State's Attorney is a quasi-judicial officer, (*People ex rel. Hoyne* v. *Newcomer,* 284 Ill. 315,) and as such is not liable for neglect or failure to perform any duty not expressly enjoined upon him by statute. *State* v. *Egbert,* 123 Ind. 148, 24 N. E. 256; *Weise* v. *Tate,* 45 Ill. App. 626.

The general rule of liability applying to judges applies alike to all officers exercising quasi-judicial powers, and they are exempt from liability for error or mistake of judgment in the exercise of their duty in the absence of corrupt or malicious motives. (*People* v. *Bartels,* 138 Ill. 322; *Kendall* v. *Stokes,* 3 How. 87, 11 L. ed. 506-833; *McCormick* v. *Burt,* 95 Ill. 263; *Gilbert* v. *Bone,* 64 id. 518.) There is no charge that the State's Attorney disregarded any law in the foreclosure of the tax lien in question, or that he received any compensation, or had any knowledge of the acts of the owner and purchaser, nor is there anything to show he acted other than in the utmost good faith. The most that can be inferred from the facts is that he required a bid of at least $5500 before he would start the proceeding. Far from showing a neglect or lack of diligence the State's Attorney strictly followed the law applicable to such cases, and went beyond such requirements in seeing that a sufficient bid was guaranteed to prevent the proceeding from being fruitless.

Counsel also complain that the State's Attorney should have objected to the amount for which the property was sold and had it readvertised for sale, but no facts are alleged that any more money would have been realized from

a new sale. It is also complained that the State's Attorney did not bring a suit for a personal judgment against defendant Lindop, or the prior owners of the property in the same proceeding in which the tax lien was foreclosed. We are not convinced from anything pointed out in appellants' brief that such an action could be taken, but even if possible, it was still a matter of discretion for the State's Attorney to bring one or several suits to enforce liens or obtain personal judgments to enforce tax delinquencies. The acts alleged against the State's Attorney or his assistant are wholly insufficient to create a cause of action.

The connection of the president and the board of commissioners of Cook county requires little discussion. They constitute a governmental body; there are hundreds of millions of dollars of delinquent taxes against property in Cook county, and it is wholly beyond the power of any taxpayer, or of this court to declare there is a duty in any case upon the part of the board of commissioners to undertake the purchase of real estate at tax foreclosure sales, and enter into the business of reselling the property, with its accompanying expenses and the expenditure of large amounts of taxpayers' money, to accomplish any satisfactory results.

There was no cause of action alleged against any of these groups either singly or together. All of the different persons named as defendants either did what they had a lawful right to do, or what they did do was performed in a legal manner.

The final suggestion is made that this court should suggest some way to solve the delinquent tax situation as we know it to exist in Illinois. It is not within our province, even if within our ability, to take such a course; that is a matter wholly for the legislature. Article III of the constitution provides: "The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collec-

tion of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The clear meaning and intention of the constitution is that each department of the government shall perform its own function. It is the business of the courts to construe the law in cases presented to them; it is the business of the legislature to enact laws necessary to the welfare of the State. The matter suggested is wholly beyond our province and contrary to the constitution.

There is no merit in the contentions of appellants, and accordingly the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*