POSNER, Circuit Judge.
Before us are appeals by two Illinois prosecutors, Wharrie and Kelley, who claim absolute immunity from being sued by Nathson Fields under 42 U.S.C. § 1983. Appeals from denial of immunity, though interlocutory because the case against them remains pending in the district court, are immediately appealable provided that, as in this case, the claim (in this case claims) of immunity depends on an issue of law rather than one of fact. Mitchell v. Forsyth, 472 U.S. 511, 527-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
Fields’ suit charges the defendants with depriving him of liberty in violation of the Fourteenth Amendment’s due process clause and committing torts of malicious prosecution, intentional infliction of emotional distress, and conspiracy, in violation of Illinois law. Specifically he accuses the defendants of having coerced witnesses to give testimony that the defendants (as well as the witnesses) knew to be false, resulting in Fields’ conviction of two murders and his imprisonment for 17 years until he was acquitted in a retrial; he later received a certificate of innocence from the court in which he had been tried. 735 ILCS 5/2-702.
This is the defendants’ second round of appeals. Our decision in round one sets forth the factual details relating to Fields’ claims, 672 F.3d 505, 508-09 (7th Cir.2012); we needn’t repeat them. Fields accuses *1110 Wharrie of two separate acts (one in 1985, the other in 1998) of coercing false testimony from witnesses, and Kelley of similar coercion in 1998. We should clarify the terminology used by Fields to describe his claims. He uses “coerced,” “fabricated,” and “false” testimony interchangeably to mean testimony procured by a prosecutor who knows it’s false. The use of the three terms to denote the same conduct is confusing. For they mean three different things. Coerced testimony is testimony that a witness is forced by improper means to give; the testimony may be true or false. Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it. Much testimony is inaccurate, but not deliberately so and therefore not false or fabricated as we are using these words.
Originally the district court had dismissed, on the ground of absolute prosecu-torial immunity, only the federal claim against Wharrie that was based on his alleged misconduct in 1985. Fields did not appeal, but the prosecutors did, challenging the district court’s refusal to dismiss the other claims. Our decision in that first appellate round ordered the dismissal of the remaining federal claims against both defendants on grounds of absolute prose-cutorial immunity. 672 F.3d at 519. The state law claims, also a subject of the prosecutors’ appeal, remained in the case. But we didn’t discuss them, because we expected that with the federal claims dismissed the district judge would relinquish jurisdiction over the state law claims; for they were supplemental claims, which normally are dismissed when the federal claims to which they are supplemental drop out of the case before trial. See 28 U.S.C. § 1367(c)(3); Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir.1993); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254-55 (6th Cir.1996); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995). Indeed we suggested he do that. 672 F.3d at 518-19.
So the case was still alive in the district court, if barely, when unexpectedly the district judge granted the plaintiffs motion to reconsider the dismissal of one of his federal claims — Wharrie’s alleged fabrication of testimony by a witness during the investigation in 1985 that led to Fields’ indictment and trial — in light of our intervening decision in Whitlock v. Brueggemann, 682 F.3d 567 (7th Cir.2012). The judge also decided to retain supplemental jurisdiction of several of Fields’ state law claims. By thus partially stripping the defendants of absolute prosecutorial immunity, the judge’s rulings precipitated this, the defendants’ second appeal.
The claim that the district judge reinstated against Wharrie is the one concerning Wharrie’s investigation of Fields in 1985. Prosecutors, like judges, enjoy absolute immunity from federal tort liability, whether common law or constitutional, because of “concern that harassment by unfounded litigation would cause a deflection of the prosecutor’s energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.” Imbler v. Pachtman, 424 U.S. 409, 423, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); see also Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949) (L.Hand, J.). But the absolute immunity is only for acts they commit within the scope of their employment as prosecutors. Buckley v. Fitzsimmons, 509 U.S. 259, 273-76, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); Thomas v. City of Peoria, 580 F.3d 633, 638-39 (7th Cir.2009); Pinaud v. *1111 County of Suffolk, 52 F.3d 1139, 1147 (2d Cir.1995). Often their employment duties go beyond the strictly prosecutorial to include investigation, and when they do non-prosecutorial work they lose their absolute immunity and have only the immunity, called “qualified,” that other investigators enjoy when engaged in such work. Buckley v. Fitzsimmons, supra, 509 U.S. at 275-76, 113 S.Ct. 2606. Qualified immunity “protects government officials ‘from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).” Messerschmidt v. Millender, — U.S. -, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012).
Fields was not arrested until June 1985. Wharrie’s alleged procurement of false statements from a prospective witness in Fields’ forthcoming trial had taken place a month earlier. The trial (the first of Fields’ two trials) took place a year later. Wharrie was one of the prosecutors at that trial. Though as we said a prosecutor’s absolute immunity is limited to the performance of his prosecutorial duties, and not to other duties to which he might be assigned by his superiors or perform on his own initiative, such as investigating a crime before an arrest or indictment, Wharrie argues that he is insulated from liability for his investigative work by our decision in Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir.1994). The plaintiff in that case, which like this one was a malicious prosecution suit against prosecutors, claimed that at the investigative stage of the criminal case against the plaintiff the prosecutors had coerced witnesses to testify against him. We held that he could not base a legal claim, on those acts because until the evidence obtained by the improper acts was introduced at his trial he had not been injured and therefore no tort had been committed. “Events not themselves supporting recovery under § 1983 do not become actionable because they lead to injurious acts for which the defendants possess absolute immunity,” id. at 796— namely presenting the coerced evidence at trial. Presenting evidence at trial is a core prosecutorial function, protected by absolute prosecutorial immunity and therefore an insuperable bar to an award of damages in a suit for malicious prosecution against the prosecutor.
The analysis in our Buckley decision thus rests on the principle that there is no tort without an actionable injury caused by the defendant’s wrongful act, 20 F.3d at 796. That is indeed the law. See, e.g., Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir.2013). But the act that causes an injury need not be simultaneous with the injury (indeed it will never be exactly simultaneous) for the actor to be liable. Think of products liability. The defect that caused a pipe to burst and flood your home may have been present when the pipe was manufactured years earlier. The manufacturer would be liable despite the lapse of time. The statute of limitations would not have begun to run until the pipe burst and caused damage (though if there were a statute of repose, the deadline created by that statute may have passed). It may seem difficult to understand why a prosecutor who, acting in an investigative role before judicial proceedings against a criminal defendant began, coerced a witness or fabricated testimony, intending that it be used against the defendant and knowing that it would be used against him, should be excused from liability just because the defendant was not harmed until the witness testified and, as a result, the defendant was convicted and sentenced. He *1112 who creates the defect is responsible for the injury that the defect foreseeably causes later. Nor is the only harm that resulting from the conviction and the sentence. In the present case, as in our recent decision in Julian v. Hanna, 732 F.3d 842, 847 (7th Cir.2013), the fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him.
But consider a case in which a prosecutor, whom we’ll call A, acting in a purely investigative role, fabricates evidence against a suspect, but the prosecution of the suspect is handled by a different prosecutor, B, who though knowing that the evidence was fabricated decides to use it. And suppose A has second thoughts about what he did, and tells B not to use the evidence. But B goes ahead and uses it. It can be argued that A should not be regarded as having caused the use of the evidence at trial. Cf. Whitlock v. Brueggemann, supra, 682 F.3d at 583-84. B is protected from suit by his absolute prose-cutorial immunity, thus leaving the victim of the fabricated evidence without a complete damages remedy. He would have a partial remedy, against A, if A’s fabrication had inflicted harm against him before his trial, as by causing him to be indicted, as in Julian v. Hanna, supra.
But this is not such a case because Wharrie, the alleged fabricator of evidence against Fields, was also one of his prosecutors at trial. Nevertheless both Whit-lock and the present case differ from our Buckley decision in a respect that the panel in Whitlock (which did not question the soundness of Buckley) thought critical— namely that the misconduct of the prosecutor (there was only one) in Whitlock consisted not in coercing witnesses, as in Buckley, but in fabricating evidence. (So here is where the terminological distinctions suggested earlier in this opinion bite.) Whitlock observes that “coercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation even when their fruits are introduced at trial,” because “evidence collected with these kinds of suspect technique, unlike falsified evidence and perjured testimony, may turn out to be true.” 682 F.3d at 584 (emphasis added). The prosecutor who was sued in Whitlock was part of an investigative team that told witnesses what to say knowing that what the team was telling them was false. See id. at 571-72. This is different from coercing a reluctant witness to say what may be true. The point is not that coercion is legally irrelevant; far from it— coercion (which in an extreme case could amount to torture) may be an essential tool in “persuading” a witness to fabricate testimony. The point is only that coercion per se does not make a prosecutor acting as an investigator liable should the coerced evidence be used to obtain a conviction of an innocent criminal defendant. If the evidence obtained by coercion is sound and the defendant would have been indicted, found guilty, and sentenced, without it (though in fact he was innocent), the only victim of government misconduct is the witness who was coerced; and that is not Fields.
In Buckley the plaintiff had alleged that the coerced evidence was not only coerced, but false. But our opinion described the primary victims, and the only ones with standing to complain, as the coerced witnesses themselves. “Coercing witnesses to speak,” we said, “rather than loosening their tongues by promises of reward, is a genuine constitutional wrong, but the persons aggrieved would be Cruz and Hernandez [the allegedly coerced wit *1113 nesses] rather than Buckley. Overbearing tactics violate the right of the person being interrogated to be free from coercion. Buckley cannot complain that the prosecutors may have twisted Cruz’s arm, any more than he can collect damages because they failed to read Cruz Miranda warnings or searched Cruz’s house without a warrant. Rights personal to their holders may not be enforced by third parties.” 20 F.3d at 794-95 (citations omitted). This is analogous to the rule that a criminal defendant will not be heard to object to the admission against him of probative evidence unlawfully seized from a third party. Minnesota v. Carter, 525 U.S. 83, 90-91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); Rakas v. Illinois, 439 U.S. 128, 148-50, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
This “tough luck” rule doesn’t apply when there is no coerced witness but nevertheless fabricated evidence; the evidence might be given by a paid police informant — a compensated witness, not a coerced one. That is the distinction drawn in Whitlock, and Wharrie acknowledges that if Whitlock is the law he loses his defense of absolute immunity because he is accused of fabricating evidence before trial; and so he asks us to overrule Whitlock as inconsistent with our Buckley decision. Fabrication was alleged in Buckley as well, but as the language we just quoted from that opinion reveals, the focus was on coercion, and the primary victims, and only victims held to have standing to sue, were the coerced witnesses.
In asking us to overrule Whitlock, Wharrie ignores the alternative of overruling Buckley as being inconsistent with (the newer) Whitlock. There’s no need to embrace either alternative. Because the cases are distinguishable and the present case falls on the Whitlock side of the line, we agree with the district judge’s reinstatement of Fields’ claim against Wharrie for the latter’s alleged fabrication of evidence in 1985, before Fields’ indictment and arrest.
Wharrie is asking us to bless a breathtaking injustice. Prosecutor, acting pre-prosecution as an investigator, fabricates evidence and introduces the fabricated evidence at trial. The innocent victim of the fabrication is prosecuted and convicted and sent to prison for 17 years. On Wharrie’s interpretation of our decision in Buckley, the prosecutor is insulated from liability because his fabrication did not cause the defendant’s conviction, and by the time that same prosecutor got around to violating the defendant’s right he was absolutely immunized. So: grave misconduct by the government’s lawyer at a time where he was not shielded by absolute immunity; no remedy whatsoever for the hapless victim. In Buckley, in contrast, two victims — the coerced witnesses — had a damages remedy, and the fact that there thus were potential plaintiffs could be expected to have some deterrent effect against future misconduct. To extend Buckley to overrule Whitlock would leave a victim of graver misconduct (because coercion does not always result in fabrication of evidence — even torture must often elicit truthful confessions) completely unprotected.
That’s not only an offensive and indeed senseless result, but it doesn’t jibe with the Supreme Court’s decision in Buckley, where we read that “the [fact that] prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial. A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as ‘preparation’ for a possible *1114 trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. ” Buckley v. Fitzsimmons, supra, 509 U.S. at 275-76, 113 S.Ct. 2606 (emphasis added, footnote omitted); see also Zahrey v. Coffey, 221 F.3d 342, 349, 354 (2d Cir.2000); McGhee v. Pottawattamie County, 547 F.3d 922, 932-33 (8th Cir.2008); Moore v. Valder, 65 F.3d 189, 194-95 (D.C.Cir.1995). A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrongdoing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity. That would create a “license to lawless conduct,” which the Supreme Court has said that qualified immunity is not to do. Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whar-rie’s interpretation of our decision in Buckley would place that decision in conflict with the Supreme Court’s Buckley decision, by giving absolute immunity to prosecutor-investigators who having fabricated evidence make sure that the evidence is used to convict the innocent victim of the fabrication.
So Wharrie has not demonstrated an entitlement to absolute immunity — nor to qualified immunity for the fabrication, either. For it was established law by 1985 (indeed long before), when the fabrication is alleged to have occurred, that a government lawyer’s fabricating evidence against a criminal defendant was a violation of due process. See Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Pyle v. Kansas, 317 U.S. 213, 215-16, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Mooney v. Holohan, 294 U.S. 103, 110, 112-13, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (per curiam). It is true that the cases we’ve just cited involved not merely the fabrication, but the introduction of the fabricated evidence at the criminal defendant’s trial. For if the evidence hadn’t been used against the defendant, he would not have been harmed by it, and without a harm there is, as we noted earlier, no tort. But when the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case. As the Court said in Harlow v. Fitzgerald, supra, 457 U.S. at 819, 102 S.Ct. 2727, the test for qualified immunity is “the objective legal reasonableness of an official’s acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action ” (emphasis added) — or may not.
So notice the disjunction: the immunity depends on the official’s acts; the existence of a cause of action depends on the illegality of those acts and on whether an injury results, because, to repeat, no injury — no tort. Recall the earlier point derived from the Supreme Court’s decision in Buckley that without that distinction a prosecutor who in a pre-prosecution investigative role fabricates evidence obtains immunity simply by turning over the fabricated evidence to the prosecutor, or prosecuting the defendant himself, for in neither case is he the direct cause of the defendant’s injury (the wrongful conviction).
It remains to consider two of Fields’ state law claims. The first arises from the same 1985 conduct alleged of Wharrie that we’ve been discussing. The second is false testimony allegedly coerced by defendant Kelley in 1998, while Fields was awaiting the retrial of his murder case.
The district court held, and both parties agree, that the Illinois rule of absolute prosecutorial immunity is the same as the *1115 federal rule. Actually that’s not entirely clear. The last time the Supreme Court of Illinois spoke to the issue it held that all Illinois officials—including judges—enjoy immunity only “from liability for error or mistake of judgment in the exercise of their duty in the absence of corrupt or malicious motives.” People ex rel. Schreiner v. Courtney, 380 Ill. 171, 43 N.E.2d 982, 986 (1942) (emphasis added). That’s not absolute immunity. But 71 years on, it is doubtful that this is still the law in Illinois. The Illinois Appellate Court seems not to think so. See, e.g., Frank v. Gamati, 370 Ill.Dec. 931, 989 N.E.2d 319, 322 (Ill.App.2013); White v. City of Chicago, 369 Ill.App.3d 765, 308 Ill.Dec. 518, 861 N.E.2d 1083, 1087-88 (2006); Weimann v. Kane County, 150 Ill.App.3d 962, 104 Ill.Dec. 110, 502 N.E.2d 373, 377 (1986); People v. Patrick J. Gorman Consultants, Inc., 111 Ill.App.3d 729, 67 Ill.Dec. 540, 444 N.E.2d 776, 779 (1982); Coleson v. Spomer, 31 Ill.App.3d 563, 334 N.E.2d 344, 347 (1975). And the state’s supreme court has not called a halt to the trend in the intermediate appellate court. E.g., Frank v. Gamati, 374 Ill.Dec. 565, 996 N.E.2d 12 (2013) (denying appeal). Although some cases recite what sounds like the rule from Courtney, in none was immunity denied on the ground of bad faith. See, e.g., Aboufariss v. City of De Kalb, 305 Ill.App.3d 1054, 239 Ill.Dec. 273, 713 N.E.2d 804, 812 (1999).
Since, as just explained, Illinois may not even have absolute prosecutorial immunity, and since Wharrie does not claim that if Illinois does have it, it is more absolute than the federal rule, and since we’ve already held that Wharrie is not entitled to absolute immunity from being sued on the federal claims against him, there is no basis for giving him absolute prosecutorial immunity from the state law claims for the same conduct alleged as a violation of Illinois tort law.
Kelley’s alleged procurement of false testimony took place in 1998, in preparation for Fields’ second trial and therefore in the midst of his prosecution. Once prosecution begins, bifurcating a prosecutor’s role between investigation and prosecution is no longer feasible. If in the course of a trial a prosecutor were to urge one of his witnesses to lie, it would be arbitrary to describe this as an investigative act separate from prosecution; the prosecutor’s conduct would have been “intimately associated with the judicial phase of the criminal process,” and he would therefore be entitled to absolute immunity. Imbler v. Pachtman, supra, 424 U.S. at 430, 96 S.Ct. 984; see also Smith v. Power, 346 F.3d 740, 742 (7th Cir.2003); Wamey v. Monroe County, 587 F.3d 113, 120-21 (2d Cir.2009); Genzler v. Longanbach, 410 F.3d 630, 638 (9th Cir.2005) (investigation “bound up with the judicial process”). It would be unlike the case discussed in the Supreme Court’s Buckley decision of prosecutors held by the Court not to be entitled to absolute immunity for fabricating evidence “during the early stages of the investigation” when “police officers and assistant prosecutors were performing essentially the same investigatory functions.” Buckley v. Fitzsimmons, supra, 509 U.S. at 262-63, 113 S.Ct. 2606.
The district judge ruled after our first decision and consistently with the analysis just presented that Wharrie had absolute prosecutorial immunity under state as well as federal law for his allegedly procuring false testimony in anticipation of Fields’ retrial in 1998, and Fields has not appealed that ruling. We cannot understand on what basis the district judge distinguished the identical conduct alleged against Kelley in the same stage of the same proceeding against Fields, and so *1116 denied his motion to dismiss the claim against him. True, Kelley may not yet have been “officially” part of the trial team at Fields’ retrial, but he was already functioning as part of the team and that’s all that matters, as we noted in our first opinion. See 672 F.3d at 511-12, 515-16; see also Van de Kamp v. Goldstein, 555 U.S. 335, 343-45, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009).
And so, to summarize, the denial of Wharrie’s motion to dismiss the federal and state claims against him relating to the fabrication of false statements from a witness during the investigation in 1985 is affirmed, but the denial of Kelley’s motion to dismiss the 1998 state law claims against him is reversed with instructions that the district court reconsider that denial in light of the analysis in this opinion.
Affirmed in Part, Reversed in Part, and Remanded.