POSNER, Circuit Judge,
concurring and dissenting.
I disagree with the majority only in regard to -its dismissal of the count of the complaint in which the plaintiff alleges that some of the defendants, notably investigator Haskett, acted outside the scope of their prosecutorial duties “with deliberate indifference to Plaintiffs constitutional rights.” Now it’s true that the pleading is clumsy; the count is captioned “Malicious Prosecution Pursuant to Indiana’s Tort Claims Act,” a theory of liability that as explained in the majority opinion has no possible merit and no possible relevance to the plaintiffs federal claims. But two of the specific allegations that foliow the caption state a claim for relief under 42 U.S.C. § 1983, which so far as relates to this case provides that “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in án action at law, suit in equity, or other proper proceeding for redress.” Typically the statute is invoked as a means of enforcing the due process clause of the Fourteenth Amendment.
The allegations that seem to me to state a constitutional claim are that “Defendants assisted or caused to be published- statements in the press and on websites and blogs containing information regarding Plaintiffs alleged criminal activity which they knew was false, inaccurate and incomplete and with the intent of harming Plaintiff to Defendants^] benefit,” and also that the defendants “contacted Plaintiffs business clients that had no connection to this matter and advised that she was involved in criminal activity and they should no longer do business with her.”
The defendants state that “to the extent Appellant may have feared that the press statements would inflame the public against her, a jury found her not guilty, meaning there was no harm from the statements and therefore no violation of her constitutional rights from the statements.” But the plaintiff is not complaining about the effect of the statements on the jury — how could she, given her acquittal? — but about their effect on her livelihood as a practicing lawyer.
In its only reference to the plaintiffs complaint about efforts by members of the prosecutorial team to turn her clients against her, the defendants’ brief acknowledges that Kim Haskett “contacted Appellant’s clients and told them that Appellant was involved in illegal activity. Whether these matters were negligent or malicious, they were conducted in the course of Haskett’s role as investigator of securities violations and riot in any other capacity.” That’s no defense. The absolute prosecuto-rial immunity here invoked by the defendants does not extend to investigators, such as Haskett — even prosecutors lose *652 their absolute prosecutorial immunity when they engage in investigations. Fields v. Wharrie, 740 F.3d 1107, 1112-13 (7th Cir. 2014).
No matter, the majority opinion states, for all that the plaintiff is alleging (in regard to “efforts by members of the prosecutorial team to turn her clients against her”), is defamation, and as to that the opinion states that “the Due Process Clause is not ‘a font of tort law to be superimposed upon whatever systems may already be administered by the States,’ ” quoting Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Judge Sykes’s opinion, further quoting Paul v. Davis, goes on to say that “Katz-Crank has not alleged that the defendants altered her legal status in some way, or impaired her employment prospects with the government, or deprived her of a right she once held, or revoked a license ‘recognized and protected by state law.’ See id. at 704-05, 96 S.Ct. 1155 (legal status); id. at 705-06, 709-10, 96 S.Ct. 1155 (government employment); id. at 707, 96 S.Ct. 1155 (right once held); id. at 710-11, 96 S.Ct. 1155. (license). She alleges only that they damaged her reputation. But (reputation alone, apart, from some more tangible interests,’ is neither liberty, nor property ‘by itself sufficient to invoke the procedural protection of the Due Process Clause.’ Id. at 701, 96 S.Ct. 1155; id. at 712, 96 S.Ct. 1155 (‘[PJetitioners’ defamatory publications, however seriously they may have harmed respondent’s reputation, did not deprive him of any “liberty” or “property” interests protected by the Due Process Clause.’).”
The majority opinion’s reliance on Paul v. Davis, while natural since it’s the leading case dealing with an allegation of defamation in a section 1983 suit, misconceives the Supreme Court’s opinion. The key passages in the opinion are, first, that “The words ‘liberty’ and ‘property as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law, While we have in a number of our prior cases pointed out the frequently drastic effect of the ‘stigma’ which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either ‘liberty’ or ‘property’ by itself sufficient to invoke the procedural protection of the Due Process Clause.” Id. at 701, 96 S.Ct. 1155, emphasis added. The second key passage is that “it1 is to be noted that this is not a case where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity.” Id. at 705, 96 S.Ct. 1155, quoting Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), emphasis added.
The wrinkle in this case is that the plaintiff is self-employed. Were she employed and lost her job, then according to Paul v. Davis the loss mig]it count as a deprivation of property in violation of the Fourteenth Amendment and thus of 42 U.S.C. § 1983. But to be self-employed, and lose one’s self-employment (or a great deal of it) by being defamed, is the equivalent of being fired or suffering a drastic reduction in pay. I therefore interpret Paul v. Davis to entitle the plaintiff in this case to prove if she can that the defamatory conduct of Haskett and other defendants inflicted a harm on her comparable to the harm she would have suffered had she been employed and lost her employment as a result of lies about her spread by the defendants.
It’s true that in a subsequent Rehnquist opinion, Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), further *653 illustrating his fiercely protective attitude, not readily derivable from the Constitution, toward states’ rights, he seemed to step back from the proposition announced in Paul v, Davis that loss of employment (and here I add, loss of self-employment) caused by defamation is actionable under federal law. But he didn’t say the Court was overruling Paul v. Davis, which remains the leading case on harm, actionable in federal courts under federal law, caused by defamation. We must choose between the two decisions, and I choose Paul as the more intelligent and civilized decision. The Court did express' concern lest “every legally cognizable injury which may have been inflicted by a state official acting under ‘color of law’ establish^ ] a violation of the Fourteenth Amendment.” Paul v. Davis, supra, 424 U.S. at 699, 96 S.Ct. 1155. But it did not say that no injury caused by defamation is ever actionable under the amendment.
We should reverse the dismissal of the defamation claim insofar as it alleges a drastic reduction in the plaintiffs legal business as a consequence of the misconduct by the defendants, and remand for a trial.