**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 30, 2019[*]
Decided June 11, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-3594

| | |
|---|---|
| LORENZO DEMOND KYLES, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District |
| | of Wisconsin. |
| *v.* | |
| | No. 17-cv-188-bbc |
| LEAHANNA KRIZAN, *et al.*, | |
| *Defendants-Appellees*. | Barbara B. Crabb, |
| | *Judge*. |

### O R D E R

Lorenzo Kyles, a Wisconsin inmate, sued two nurses and a correctional officer at his prison under 42 U.S.C. § 1983 for violating the Eighth Amendment by inadequately treating his thumb injury and his pain. The district judge entered judgment for the defendants, reasoning that, in light of the drugs, medical exams, and surgery that Kyles

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

received, the undisputed facts show that the defendants did not violate the Eighth Amendment. We agree with that assessment and therefore affirm.

We recount the facts in the light most favorable to Kyles, the opponent of summary judgment. *See Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). Kyles jammed his left thumb in 2016 while playing basketball. For the next two weeks, Kyles iced his thumb, bandaged it, and took ibuprofen to treat the pain and swelling. Despite these self-applied efforts, his thumb did not heal, so he asked to see the prison's medical staff. Leahanna Krizan and Renee Anderson, nurses at the prison, saw Kyles at his first appointment. He described his injury and self-treatment, and he asked for a doctor. Krizan told him that one was not available; instead, the two nurses examined Kyles's thumb. Their judgment, based on their examination, was that the thumb was not fractured because Kyles could move it. The nurses both concluded that Kyles likely had a sprained thumb that needed about two months to heal. They wrote in Kyles's medical records that Kyles was experiencing pain, bandaged his thumb, and provided him with more ibuprofen and ice.

After two months, the thumb had not healed, so Kyles sought more medical care. He complained that his left thumb differed from his right thumb and asked that the staff check it for a possible fracture. Anderson, the nurse, examined it and referred him to a doctor. She noted that the thumb showed no swelling or obvious deformity and had full flexion, albeit with some discomfort. According to Kyles, at this visit Anderson refused to give him more ibuprofen "because she got upset with [his] continuous request for a doctor." Pain medicine, including ibuprofen, is always available at the prison's canteen.

Kyles saw the prison's doctor two weeks later and received further treatment. The doctor ordered x-rays and gave Kyles pain medicine. The x-rays revealed that Kyles had a partial dislocation that had healed improperly. The doctor referred Kyles to an orthopedic surgeon, who saw Kyles two days later and a week after that successfully performed ligament-reconstruction surgery on the thumb. The surgeon wrapped Kyles's hand, put Kyles's arm in a sling, and prescribed Vicodin, to be taken every six hours. Two days later, Kyles took his Vicodin pill in the morning and four hours later asked Reed Stuve, the officer on duty at the medication window, for his next dose of Vicodin. Stuve told Kyles to return two hours later (allowing for six hours between doses, as prescribed), even though Kyles said that he was in pain and wanted a nurse. Two hours later, Kyles returned and received the Vicodin from Stuve.

Three months later, Kyles attended a follow-up appointment. A physical therapist taught Kyles daily exercises for his thumb and recommended that he work

with physical therapists at the prison to improve his range of motion. Judy Bentley, a nurse practitioner who saw from Kyles's treatment notes that he had learned the daily exercises, ordered physical therapy for Kyles. Kyles complained when a week passed without starting therapy. After another week passed without physical therapy, Kyles returned for a follow-up appointment with his surgeon. The surgeon noted that Kyles's thumb had nearly a full range of motion 14 weeks after surgery, an excellent surgical result. Kyles started physical therapy about two weeks later and regained 90 percent of his range of motion. According to the physical therapist at the prison, the one-month delay in starting physical therapy was appropriate because Kyles had exercises to perform on his own and the delay did not result in Kyles losing any range of motion.

Next came this suit against the two nurses (Krizan and Anderson) and the corrections officer (Stuve) for deliberate indifference to his thumb injury and pain. The district court entered summary judgment for the defendants, and it denied Kyles leave to amend his complaint to sue Bentley for delaying his physical therapy. Krizan and Anderson, the court explained, reasonably treated Kyles at the first visit, and Anderson did not recklessly refuse to give him ibuprofen at his next appointment because she knew that it was available at the canteen. Stuve also was not liable because he followed Kyles's prescription for Vicodin every six hours. Finally, Kyles could not proceed on proposed claims against Bentley because nothing in the record showed that he needed physical therapy sooner.

On appeal, Kyles argues that he furnished enough evidence for a trial on his Eighth Amendment claims. To survive summary judgment, he must present evidence that would allow a reasonable jury to conclude that the defendants deliberately ignored a serious health condition. *See Farmer v. Brennan*, 511 U.S. 825, 837–40 (1994); *McGee v. Adams*, 721 F.3d 474, 480–81 (7th Cir. 2013). He has not.

Kyles first argues that in two ways Krizan and Anderson violated the Eighth Amendment and also committed medical malpractice under state law by prolonging his thumb pain: At his first appointment with them, they prescribed the same treatment that he told them he had self-administered for two weeks with no pain relief, and they unjustifiably refused to refer him to a doctor at this first appointment. These contentions have multiple flaws. To begin, Krizan and Anderson were not required to take Kyles's word about his self-treatment and its efficacy; rather, they could make their own, independent medical judgments about the necessity of certain treatments. *See Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). And they did so by examining his hand for (and seeing) movement, bandaging it, icing it, and providing a pain reliever. Moreover, they did not refuse to allow him to see a doctor; one was not available, and

Kyles does not dispute this. Finally, the evidence that the nurses submitted from a medical expert states that their service met the standard of ordinary medical care for Kyles's first appointment, so this undisputed evidence demonstrates that the nurses did not recklessly disregard his medical needs. *See Hoffman v. Knoebel*, 894 F.3d 836, 841 (7th Cir. 2018). This undisputed evidence also disposes of his negligence claim under state law. *See Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 699 N.W.2d 524, 537 (Wis. 2005) (requiring plaintiff to provide expert testimony in medical malpractice cases under state law); *Christianson v. Downs*, 279 N.W.2d 918, 921 (Wis. 1979) (same).

Second, Kyles contends that at his second appointment with Anderson, she was deliberately indifferent to his pain because, although she referred him to a doctor who steered him to surgery, she did not hand him more ibuprofen. He insists that Anderson did not hand him ibuprofen because she was "upset" with his demand to see a doctor. Even if we assume that Anderson was upset, the record contains insufficient evidence for a jury to find that, in not dispensing him ibuprofen before he saw the doctor, and leaving him to use the canteen to get the drug, she acted recklessly. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). No evidence suggests that Kyles was unable to get ibuprofen from the canteen, or that Anderson would ordinarily have handed him ibuprofen without requiring a payment similar to that expected by the canteen. Under these circumstances, a reasonable jury could not find that, by requiring that he use the canteen, Anderson culpably disregarded a serious risk to Kyles's pain. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Next, Kyles contests the entry of summary judgment on his claim against Stuve. He argues that, by telling Kyles, who said he was in pain, to wait the prescribed six hours before receiving his next dose of Vicodin, Stuve violated the Eighth Amendment. As a correctional officer without medical training, Stuve was entitled to rely on the judgment of medical professionals, even if Kyles insisted that he was in pain. *See McGee*, 721 F.3d at 483; *Knight v. Wiseman*, 590 F.3d 458, 465 (7th Cir. 2009). Stuve did so here by dispensing Kyles's Vicodin just as prescribed by the prison's doctor who, based on this record, Stuve had no reason to believe was mistreating Kyles. *See McGee*, 721 F.3d at 483; *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

Finally, Kyles argues that he should have been allowed leave to amend his complaint to proceed on his claim against Bentley who, he contends, unnecessarily delayed by one month his physical therapy. We review denials of leave to amend for an abuse of discretion. *See Owens v. Hinsley*, 635 F.3d 950, 956 (7th Cir. 2011).

We see no abuse of discretion because Kyles has not asserted a medical basis for his claim against Bentley. For one thing, Kyles does not dispute that, as his medical

records show, he learned how to perform thumb exercises in his cell that would aid his recovery as he awaited the onset of physical therapy. *See Burton v. Downey*, 805 F.3d 776, 787 (7th Cir. 2015) (holding that an inmate could not sustain a claim of deliberate indifference when medical personnel at the prison instructed the inmate how to perform therapy in his cell). Moreover, Kyles has not asserted that, after allowing for the therapeutic benefits of his in-cell exercises, the brief delay in starting physical therapy seriously risked impairing his recovery. Finally, he not asserted that Bentley knew about and deliberately disregarded any such risk. Without Bentley knowing about a material problem caused by the one-month delay, Kyles could not sustain this claim against her. *See Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014).

AFFIRMED