In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-1277

JESUS ZAMBRANO,

*Plaintiff-Appellant,*

*v.*

CITY OF JOLIET and PATRICK SCHUMACHER,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-04496 — **Steven C. Seeger,** *Judge.*

———————————

ARGUED DECEMBER 5, 2024 — DECIDED JUNE 23, 2025

———————————

Before SYKES, *Chief Judge,* and ROVNER and ST. EVE, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jesus Zambrano was convicted of first-degree murder in an Illinois state court in August 2013, but on appeal the Illinois Appellate Court agreed that the trial court erred in failing to give a jury instruction on accomplice liability. A second trial ensued in which Zambrano was acquitted of the charge, and he subsequently filed a federal suit

against one of the arresting officers, Detective Patrick Schumacher, and sought indemnification from the City of Joliet. The lawsuit alleged that Schumacher fabricated evidence that denied him due process under the Fourteenth Amendment.

The criminal trials involved the murder of Robert Gooch, who was shot and killed at the apartment of his girlfriend, Elissa Hinton, in the Larkin Apartments complex in the early hours of May 22, 2009. Hinton was in the apartment where the murder occurred, and when Gooch answered the door of the apartment, Hinton heard Pedro Sanchez's voice say, "it was my girl," and then heard a shot which killed Gooch. At Zambrano's trial, evidence was introduced as to Zambrano's whereabouts and actions on the day and night of the crime. Detective Schumacher testified that he spoke with Zambrano at Zambrano's home on the afternoon of May 22, and Zambrano informed him that on the afternoon of May 21 he was with two friends, Pedro Sanchez and Michael Ortiz, at the apartment of Zambrano's girlfriend, Claudia Sanchez, located near the area of Ruby Street and the westside of the Des Plaines River. In addition, another individual, Christian Lopez, testified that he was with Zambrano and those same two friends at Claudia Sanchez's apartment, and that they were drinking and smoking marijuana. He testified that Zambrano later drove the group to McDonald's and then to the Larkin Apartments. Lopez further testified that when they got to the apartment complex, he saw Zambrano get a gun from the car's hood, and then Lopez, Pedro Sanchez and Zambrano went into the apartment building. Lopez testified that he waited at the bottom of the stairwell, and that Sanchez and Zambrano climbed up three floors. He heard a gunshot, and Zambrano and Sanchez ran down the stairs to the car, where Zambrano put the gun back under the car hood and drove

everyone back to his house. The jury was also shown surveil-
lance video from the McDonald's, which showed a sedan
driven by Zambrano pull through the drive-through at the
McDonald's between 12:36 a.m. and 12:40 a.m. on May 22.
They also saw surveillance video from the Larkin Apart-
ments, which was a 5-10- minute drive from the McDonald's,
showing Zambrano's sedan pulling up at 12:47 a.m., and
which showed the driver retrieve something from under the
car's hood and walk toward the building with two individu-
als. It also showed them return to the car at 12:51 a.m., reveal-
ing that the driver ran across the grass, put something under
the car's hood, and drove away. The jury found Zambrano
guilty, but on appeal the appellate court agreed with Zam-
brano that the trial court erred in failing to instruct the jury
about accomplice liability. The same evidence was presented
in a retrial, and the jury in that trial acquitted Zambrano.

In his due process challenge in this case, Zambrano alleges
that Detective Schumacher fabricated evidence in his police
report which related the initial interview with Zambrano. On
the afternoon of the day of the murder, Detective Schumacher
and five other officers investigating the crime went to Zam-
brano's home and spoke with him. Zambrano was home at
that time with his mother and two friends, Pedro Sanchez and
Michael Ortiz. As Detective Schumacher later set forth in his
police report, Zambrano told him that "in the afternoon hours
of May 21, 2009, he was with his friends, Pedro Sanchez and
Michael Ortiz at Claudia Sanchez's residence located near the
area of Ruby Street and the westside of the Des Plaines River."
Zambrano admits that he was in fact at Claudia Sanchez's res-
idence at that time and with Pedro Sanchez and Michael
Ortiz. He asserts, however, that he did not give those details
to Detective Schumacher, stating only that he hung out with

his girlfriend and a couple of friends, but that he did not provide the names of his friends, nor did he tell Schumacher how to find Claudia Sanchez's house on a map. He alleges, therefore, that those statements in the police report by Schumacher were falsifications. The police report was not introduced into evidence at trial, but Zambrano testified at trial consistent with the statements as set forth in his police report.

A fabrication of evidence challenge can implicate different constitutional protections. A claim for a false arrest or pretrial detention based on fabricated evidence implicates the Fourth Amendment protection against seizures without probable cause, whereas a claim that fabricated evidence was later used at trial to obtain a conviction violates a defendant's rights under the Due Process Clause of the Fifth and Fourteenth Amendments. *Patrick v. City of Chicago*, 974 F.3d 824, 834–35 (7th Cir. 2020). Zambrano asserts only a due process claim here.

As the district court recognized, in order to succeed on his due process claim based on the fabrication of evidence, Zambrano must provide evidence which would allow a jury to conclude that: (1) Schumacher deliberately falsified evidence in bad faith; (2) the evidence was used at Zambrano's criminal trial; (3) the evidence was material; and (4) Zambrano was damaged as a result. See *Patrick*, 974 F.3d at 835. Considering only the first two factors, the district court held that neither factor was met and granted summary judgment in favor of the defendants. Zambrano now appeals that grant of summary judgment. We agree that Zambrano failed to produce evidence sufficient to create a genuine issue of fact as to the elements of his claim of fabrication of evidence, and we will address the first and third factors to illustrate that deficiency.

The first factor requires a determination that evidence was falsified, and that the falsification was done in bad faith, and the third requires that such falsified evidence was material. As to the first factor, we have repeatedly emphasized that fabricated evidence is testimony that is invariably false, and that is known to be untrue by the fabricator, as opposed, for instance, to coerced testimony that is forced by improper means but may be true or false. *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014); *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014). Here, the statement that Zambrano identifies as false is the statement that Zambrano named the two friends that he was with on that afternoon, and that he revealed the location of his girlfriend's apartment. He does not contest that the names of the friends and the location of the apartment set forth in the police report by Schumacher are accurate, but maintains that Schumacher falsely stated that Zambrano provided those details. Even if Zambrano's recollection is enough to allow a jury to conclude that the statement in the police report attributing those details to Zambrano was false, Zambrano has failed to provide sufficient evidence to support a finding that Schumacher knew that to be untrue and acted in bad faith in including those details, nor is there sufficient evidence to conclude that the fabricated evidence was material.

Although state of mind is generally a factual issue not easily amenable to determination as a matter of law, here Zambrano failed to present any evidence of the requisite bad faith. Zambrano merely presents his own statement that he did not tell Schumacher that information. That allows a conclusion that the statement was false but without more, under the specific circumstances under which the police report was prepared here, does not allow a reasonable inference of bad faith.

The police report at issue here was filled out at 2:30 am following a day-long investigation. In Schumacher's first interview with Zambrano at Zambrano's apartment that afternoon, Zambrano told Schumacher he was with two friends, and his friends Pedro Sanchez and Michael Ortiz were present with Zambrano in the apartment at the time of that conversation. During subsequent interviews that day, three other witnesses confirmed that Zambrano was with his friends Pedro Sanchez and Michael Ortiz at Claudia Sanchez's apartment the afternoon before the murder. Those witnesses included Zambrano's girlfriend Claudia Sanchez, her roommate, and Christian Lopez. No person interviewed contradicted that information or indicated that a different person was one of the two friends present with Zambrano that afternoon. And Zambrano admits that the two friends present that afternoon preceding the murder were in fact Pedro Sanchez and Michael Ortiz. The other fact that Schumacher attributes to Zambrano, which Zambrano denies saying, was simply the location of Claudia Sanchez's apartment. Once again, the accuracy of that fact is not disputed. The dispute is merely whether Zambrano provided that information to Schumacher.

In the police report written at 2:30 in the morning after that long day of investigative interviews, Schumacher stated that the conversation with Zambrano was set forth "in essence and not verbatim." Even if the statement in the report summarizing the "essence" of the conversation with Zambrano erroneously stated that Zambrano identified those friends by name, there is no basis to infer bad faith in that statement. At that time, every person who identified the friends that were with Zambrano at Claudia Sanchez's apartment agreed that those two friends were Pedro Sanchez and Michael Ortiz, and those

were the two friends with Zambrano at his apartment when Schumacher interviewed him and he first stated he was with two friends. Given the uniform agreement as to their identity and their presence during the interview, there is no basis to conclude that Schumacher intentionally misattributed the identification to Zambrano, as opposed to mistakenly doing so or conflating their identification with Zambrano's statement. Certainly, Schumacher had no reason to believe that Zambrano was referring to different friends, or that he was disputing the location of Claudia Sanchez's apartment. Zambrano has at best provided evidence that the statement in the police report that he named the friends and provided the location of the apartment was untrue, but he has presented no evidence that would allow an inference that the statement was *knowingly* falsified, as opposed to mistakenly or inadvertently so. See *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 346–47 (7th Cir. 2019) (noting that fabricated evidence is evidence that the officer knows to be false); *Patrick*, 974 F.3d at 835. Given the lack of any dispute as to the identity of those friends or the location of the apartment, the circumstances do not even allow an inference that Schumacher knowingly misrepresented Zambrano's statement.

And, even if such an inference was supported, the alleged fabrication attributing the identification of the friends' names and the apartment's location to Zambrano was not material, and therefore could not support a fabrication of evidence claim. Evidence is material if there is any "reasonable likelihood the evidence affected the judgment of the jury." *Patrick*, 974 F.3d at 835; *United States v. Agurs*, 427 U.S. 97, 103 (1976). "[I]f the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty." *Patrick*, 974 F.3d at 835. The alleged fabrication

here—that Zambrano provided the names of the two friends that he was with the afternoon of the day preceding the murder and the location of the apartment—was not an issue at trial and was not relevant to the determination of his guilt. The identity of the friends that he was with, and the location of the apartment, was not contested, and whether Zambrano provided that information was not pertinent to any issue at trial.

And those underlying facts were not themselves material to the trial, because the evidence at trial placed Zambrano with those persons at the place of the murder the evening of the murder—and thus much closer to the time of the murder than the time period at issue in the police report. That evidence included the testimony of Lopez as to the persons gathered at Claudia Sanchez's house, including himself, Zambrano, Pedro Sanchez, and Michael Ortiz, and relating the actions up to and after the murder including the trip to the McDonald's and the actions at the Larkin Apartments. Surveillance video evidence corroborated that Zambrano drove to the McDonald's accompanied by passengers, and that his sedan then traveled the 5-10 minutes to the Larkin Apartments, where the driver of the sedan engaged in the same actions described by Lopez. The alleged fabricated statement identified by Zambrano does not involve any of that critical time period in which the group would have left for the McDonald's and then traveled to the Larkin Apartment complex. And Zambrano acknowledges that he was with those individuals at Claudia Sanchez's house that day, that he drove Pedro Sanchez, Michael Ortiz, and Christian Lopez to the McDonald's, and that he is the driver in the surveillance video from the McDonald's.

Zambrano does not provide any argument in his brief to this court as to the materiality of the fabricated evidence, and the record makes clear that it was not material. In fact, the same testimony by Schumacher was provided in both trials, and the second trial resulted in an acquittal. There is no reasonable likelihood that the fabricated statement affected the judgment of the jury. We need not consider the other factors, which are also problematic, because the failure to meet any factor is sufficient to support the district court's grant of summary judgment in favor of Schumacher on Zambrano's due process claim, and in favor of the City of Joliet on the claim for indemnification which was premised on Zambrano's due process claim.

Accordingly, the decision of the district court is AFFIRMED.