**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2019

Lyle W. Cayce
Clerk

No. 16-11482

EUNICE J. WINZER, Individually and on behalf of the statutory
beneficiaries of Gabriel A. Winzer; SOHELIA WINZER; HENRY WINZER,

Plaintiffs - Appellants

v.

KAUFMAN COUNTY; BILL CUELLAR; GARRY HUDDLESTON;
MATTHEW HINDS,
Defendants - Appellees

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HENRY ANDREE WINZER, also known as Henry A. Winzer,

Plaintiff - Appellant

v.

MATTHEW HINDS, Individually and in his capacity as member of Kaufman
County Sheriff Department; UNKNOWN STATE TROOPERS, Individually
and in their capacity as member of Texas Department of Public Safety;
UNKNOWN PARAMEDICS, Individually and in their capacity as emergency
responders of the East Texas EMS; SERGEANT FORREST FRIESEN,

Defendants - Appellees

Appeals from the United States District Court for the
Northern District of Texas

ON PETITION FOR REHEARING EN BANC

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:

Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

In the poll, 6 judges vote in favor of rehearing en banc, and 10 vote against. Voting in favor are Judges Smith, Elrod, Southwick, Ho, Engelhardt, and Oldham. Voting against are Chief Judge Owen, Jones, Stewart, Dennis, Haynes, Graves, Higginson, Costa, Willett, and Duncan.


ENTERED FOR THE COURT:


/s/ James E. Graves, Jr.

_____

James E. Graves, Jr.
United States Circuit Judge

JERRY E. SMITH, Circuit Judge, dissenting from the denial of rehearing en banc:

"*E pur si muove.*"  Galileo, 1633.

"Abandon hope, all ye who enter Texas, Louisiana, or Mississippi as peace officers with only a few seconds to react to dangerous confrontations with threatening and well-armed potential killers . . . .  [T]here is little chance that, any time soon, the Fifth Circuit will confer the qualified-immunity protection that heretofore-settled Supreme Court and Fifth Circuit caselaw requires." *Cole v. Carson*, 935 F.3d 444, 469 (5th Cir. 2019) (en banc) (Smith, J., dissenting).

I respectfully dissent (again).

JAMES C. HO, Circuit Judge, joined by JERRY E. SMITH, EDITH BROWN CLEMENT, and KURT D. ENGELHARDT, Circuit Judges, dissenting from denial of rehearing en banc:

If we want to stop mass shootings, we should stop punishing police officers who put their lives on the line to prevent them.

The Fourth Amendment prohibits "unreasonable searches and seizures"—not reasonable efforts to protect citizens from active shooters. The panel opinion turns this principle on its head. As Judge Clement explained in her eloquent dissent, the majority opinion "undermines officers' ability to trust their judgment during those split seconds when they must decide whether to use lethal force." *Winzer v. Kaufman County*, 916 F.3d 464, 482 (5th Cir. 2019) (Clement, J., dissenting in part). "It instructs them, in that pivotal split second, to wait. But when a split second is all you have, waiting itself is a decision—one that may bring disastrous consequences." *Id. See also Cole v. Carson*, 935 F.3d 444, 470 n.3 (5th Cir. 2019) (en banc) (Smith, J., dissenting) (same).

Acknowledging that a vote against rehearing en banc need not signal agreement with the panel majority, I respectfully dissent from the denial of rehearing en banc.

* * *

The district court set forth the disturbing events presented in this case. "The undisputed facts show that, on April 27, 2013, two Kaufman County Sheriff's Office deputies, Gerardo Hinojosa and Defendant Matthew Hinds, responded to several 9-1-1 reports of an armed man who was firing a gun and destroying mailboxes in the vicinity of County Road 316 in Terrell, Texas. One caller reported that the suspect had yelled, 'Everyone's going to get theirs,' and he wanted to 'get back what's mine.' The police dispatcher relayed these reports to responding officers." *Winzer v. Kaufman County*, 2016 WL

11472367, at *1 (N.D. Tex. Aug. 10, 2016), *rev'd in part*, 916 F.3d 464 (5th Cir. 2019).

The record contains transcripts from several understandably panicked 9-1-1 callers.

According to one 9-1-1 caller: "He's over there kicking people's mailboxes, he has a gun. It's me and my mom and my baby. I don't know who he is, please hurry. . . . He's out in the street. He's kicking the next door neighbor's uh, mailbox but he was pointing the gun to our house. I don't know who he is . . . Please hurry. . . . Oh he's outside shooting, oh my God."

Another 9-1-1 caller stated: "Please get the cops here. Oh my God. Oh my God. . . . [W]e see him kicking the mailbox and we open the door and he pointed the gun toward our house. . . . I don't know if he's out there, I have no idea, I'm not getting up." Later in that same call, a background voice can be heard, warning that "he's coming back down the street." The caller responds: "Don't open that door, Robin. He's coming back down the street."

Yet another 9-1-1 caller reported: "I had my kids outside earlier just a little bit ago and he pointed that pistol in the yard and he said 'I'm just trying to get back what's mine.'" The 9-1-1 operator confirmed that the shooter was in fact pointing at the caller's house. The caller further stated: "And he was just out there hollering at my husband, he was standing on the front porch and he saying he's going to take back what's his."

Another 9-1-1 caller stated: "I'm calling to report some gunshots. There's a man walking up and down the street screaming and firing a gun."

The district court explained what the officers found when they arrived at the scene. "Hinojosa and Hinds arrived in marked patrol vehicles and located a suspect near the intersection of County Road 316 and County Road 316A. The suspect was a black male wearing a brown shirt. The deputies positioned their vehicles approximately 100 to 150 yards away. In their

voluntary statements, the deputies wrote that the man fired one round in their direction. Hinojosa and Hinds saw white smoke rise from the gun, and Hinojosa heard a whizz go by. Hinds reported over the radio, 'Shots fired.' The deputies did not return fire. The suspect then walked toward County Road 316A, out of the officers' view." *Id.* The panel opinion acknowledged that neither officer returned fire at this time, for fear of hurting nearby civilians. 916 F.3d at 468.

The officers continued down County Road 316A and instructed people to clear the area and return to their homes. 2016 WL 11472367, at *1. When they found the armed gunman again, they identified themselves using their car's PA system and ordered him to drop his weapon. Instead, he "ducked into the tree line and out of sight." *Id.* The officers established a "defensive position," guns drawn and using police vehicles for cover. 916 F.3d at 468.

A few minutes later, Gabriel Winzer suddenly emerged from behind a house and biked towards the officers from approximately 100 yards away. One officer yelled out that Winzer had a gun. Another ordered Winzer to put the gun down. Six seconds later, one of the officers fired at Winzer. Shortly after, the other officers also fired. Winzer turned his bicycle away from the officers and disappeared from view.

Minutes later, the officers located Winzer in the backyard of a house (later determined to be the home of Winzer's father, Henry). The officers discovered that Winzer had suffered four gunshot wounds to his chest, shoulder, and upper back, and his father was nearby trying to comfort and revive him. The officers attempted to place handcuffs on Winzer's wrists, but he resisted. So the officers tased him. Once they succeeded in handcuffing him, the officers permitted the paramedics to enter the backyard. The paramedics pronounced Winzer dead at the scene. *Id.* at 468–69; 2016 WL 11472367, at *1–2.

The panel majority suggests that Winzer might not have been the suspect. 916 F.3d at 468 & n.1. But as the district court noted, a forensic report later detected the presence of gunshot residue on Winzer's body. 2016 WL 11472367, at *2. And the officers found multiple weapons in the home—four lightly modified Bushmaster rifles, a Ruger Super Blackhawk revolver, a Taurus Model 669 revolver, a Remington Model 870 Magnum shotgun, and a Bryco Model 38 pistol—as well as multiple boxes of ammunition and several expended cartridges.[1]

\* \* \*

It is unknown how many lives were saved by these deputies on April 27, 2013. What is known, however, is that Kaufman County will now stand trial for their potentially life-saving actions—and that its taxpayers, including those who will forever be traumatized by Winzer's acts of terror, will pick up the tab for any judgment.

I have deep concerns about the message this decision, and others like it, sends to the men and women who swear an oath to protect our lives and communities. For make no mistake, that message is this: See something, do nothing.

What's more, we have no business—no factual basis in the record, and no legal basis under the Fourth Amendment—second-guessing split-second decisions by police officers from the safety of our chambers. To quote Judge Clement again, "we judges—mercifully—never face that split second. Indeed,

---

[1] Courts analyze the actions of law enforcement officers for qualified immunity purposes based on the facts and reasonable beliefs they possess at the time they act. Other factors not known to them at that moment—whether facts existing at the time of their action or subsequently discovered, for better or worse—cannot later justify their actions, nor strip them of qualified immunity they otherwise enjoy. *See*, *e.g.*, *Cole*, 935 F.3d at 456 ("we consider only what the officers knew at the time of their challenged conduct") (collecting cases). Here, nothing in the record suggests who else (if not Winzer) might have been the shooter who terrorized the innocent citizens of Kaufman County that day.

we never have to decide anything without deliberation—let alone whether we must end one person's life to preserve our own or the lives of those around us." *Winzer*, 916 F.3d at 482 (5th Cir. 2019) (Clement, J., dissenting in part). "The majority opinion, written from the comfort of courthouse chambers, ignores" this reality. *Id. See also Cole*, 935 F.3d at 476 (Ho & Oldham, JJ., dissenting) ("No member of this court has stared down a fleeing felon on the interstate or confronted a mentally disturbed teenager who is brandishing a loaded gun near his school. . . . [We have] no basis for sneering at cops on the beat from the safety of our chambers.").

I respectfully dissent from the denial of rehearing en banc.