# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 27, 2022
Lyle W. Cayce
Clerk

No. 20-30406

MICHAEL WEARRY,

*Plaintiff—Appellee,*

*versus*

PAULETTE H. FOSTER, *as the Personal Representative of Appellant Marlon Kearney Foster, for substitution in the place and stead of the Appellant Marlon Kearney Foster, deceased*; SCOTT M. PERRILLOUX, *in his Individual Capacity and in his Official Capacity as District Attorney for the 21st Judicial District of Louisiana*; KEARNEY MATTHEW FOSTER, *as the Personal Representative of Appellant Marlon Kearney Foster, for substitution in the place and stead of the Appellant Marlon Kearney Foster, deceased*; WILLIAM AARON FOSTER, *as the Personal Representative of Appellant Marlon Kearney Foster, for substitution in the place and stead of the Appellant Marlon Kearney Foster, deceased*; ANNETTE FOSTER ALFORD, *as the Personal Representative of Appellant Marlon Kearney Foster, for substitution in the place and stead of the Appellant Marlon Kearney Foster, deceased*,

*Defendants—Appellants.*

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-594

ON PETITIONS FOR REHEARING EN BANC

Before KING, DENNIS, and HO, *Circuit Judges.*

Per Curiam:

Treating the petition for rehearing en banc, as to Appellant, Scott M. Perrilloux, as a petition for panel rehearing (5th Cir. R. 35 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35).

Treating the petition for rehearing en banc, as to Appellants, Paulette H. Foster, Kearney Matthew Foster, William Aaron Foster and Annette Foster Alford, as a petition for panel rehearing (5th Cir. R. 35 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35).

In the en banc poll, seven judges voted in favor of rehearing (Judges Richman, Jones, Smith, Southwick, Duncan, Oldham, and Wilson), and nine voted against rehearing (Judges Stewart, Dennis, Elrod, Haynes, Graves, Higginson, Willett, Ho, and Engelhardt).

James C. Ho, *Circuit Judge*, concurring in denial of rehearing en banc:

I agree with much of the dissent, as the dissent rightly points out. Yet I vote to deny rehearing en banc. I write to briefly explain why.

Respected judges and scholars have said that absolute prosecutorial immunity is inconsistent with the text and original understanding of 42 U.S.C. § 1983, and I tend to agree. *See Wearry v. Foster*, 33 F.4th 260, 273, 279–80 (5th Cir. 2022) (Ho, J., dubitante) (discussing authorities). I've also said that "we [should] decide every case faithful to the text and original understanding of the Constitution, to the maximum extent permitted by a faithful reading of binding precedent." *Texas v. Rettig*, 993 F.3d 408, 409 (5th Cir. 2021) (Ho, J., dissenting from denial of rehearing en banc).

Of course, as a three-judge panel deciding a case on the merits, we're required to follow governing Supreme Court and circuit precedent. That's why I would've granted prosecutorial immunity, despite my personal views.

But unlike a panel decision on the merits, the decision whether to rehear a case en banc is entirely discretionary. Nothing in the rules of federal appellate procedure requires us to take a case en banc—not even when a panel decision conflicts with Supreme Court or circuit precedent. So I exercise my discretion to maximize for the original meaning. *See id.*

Moreover, declining en banc rehearing here is consistent with the conceptual framework I've previously set forth for cases involving qualified immunity for public officials: When public officials are forced to make split-second, life-and-death decisions in a good-faith effort to save innocent lives, they deserve some measure of deference. By contrast, when public officials make the deliberate and considered decision to trample on a citizen's constitutional rights, they deserve to be held accountable. *See Horvath v. City of Leander*, 946 F.3d 787, 799–803 (5th Cir. 2020) (Ho, J., concurring); *see also Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., respecting

denial of certiorari) ("[W]hy should university officers, who have time to make calculated choices about enacting or enforcing unconstitutional policies, receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting?"); *Villarreal v. City of Laredo*, 44 F.4th 363, 371 (5th Cir. 2022) ("There is a big difference between 'split-second decisions' by police officers and 'premeditated plans to arrest a person for her journalism, especially by local officials who have a history of targeting her because of her journalism.'") (quoting the Institute for Justice).

This framework explains my votes on a number of recent en banc rehearing petitions that have sharply divided our court. *Compare Winzer v. Kaufmann County*, 940 F.3d 900 (5th Cir. 2019); *Ramirez v. Guaddarama*, 2 F.4th 506 (5th Cir. 2021), *with Oliver v. Arnold*, 19 F.4th 843 (5th Cir. 2021).

I voted in favor of the police officers in *Winzer* and *Ramirez*—and against the officials here and in *Oliver* (and *Villarreal* too). What explains my divergent votes is the divergent factual allegations presented in those cases, which we of course must accept as true at this stage of the proceedings.

In *Winzer*, police officers were engaged in a split-second, good-faith effort to protect innocent lives against an active shooter. So too in *Ramirez*, where police officers made a split-second, good-faith decision to protect innocent lives from a man who threatened to set his home and family on fire.

The present case, by contrast, falls squarely in the deliberate violation bucket. It involves an effort to deliberately coerce false witness testimony in order to secure a capital murder conviction. So too in *Oliver*, where a public school teacher was engaged in the deliberate decision to punish a student whose political or religious views he personally disagreed with.

I see no compelling need for the extraordinary remedy of rehearing en banc in light of the troubling allegations of deliberate misconduct presented in this case. Accordingly, I concur in the denial of rehearing en banc.

EDITH H. JONES, *Circuit Judge*, joined by SMITH and DUNCAN, *Circuit Judges*, dissenting from denial of en banc rehearing:

*Wearry v. Foster* should easily have garnered en banc reconsideration because it dramatically recharacterizes, and thus confuses, the scope of absolute prosecutorial immunity in the Fifth Circuit. The opinion fatally conflicts with this court's two-decade old opinion in *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003), a conflict that should alone have engendered en banc review.[1] But the opinion also conflicts with significant sister circuit decisions. And the opinion will provoke substantial litigation that otherwise wouldn't have happened. Pity the district court judges and counsel who must steer between the Scylla of *Wearry* and the Charybdis of *Cousin*. I respectfully dissent from denial of rehearing en banc.

Judge Ho's "*dubitante*" opinion explains why he saw "no principled basis that the panel majority could possibly invoke to distinguish *Cousin.*" *Wearry v. Foster*, 33 F.4th 260, 276 (5th Cir. 2022) (Ho, J., dubitante). I agree. The majority opinion is on point factually with *Cousin* but unjustifiably casts the earlier case aside in its analysis.

## A. Facts

First, the facts. In 1998, sixteen-year old Eric Walber was delivering pizza when he was kidnapped by Michael Wearry and his friends, brutally beaten, and then run over by them with a car (several times). Louisiana has since convicted Wearry twice for his role in killing Walber. The Supreme Court reversed Wearry's first capital conviction on review of a state habeas decision, concluding that the prosecution had withheld *Brady* material. *See Wearry v. Cain*, 577 U.S. 385, 136 S. Ct. 1002 (2016). Facing a retrial,

---

[1] "It is a firm rule of this circuit that in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court, a panel cannot overrule a prior panel's decision." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

however, Wearry pled guilty to manslaughter in 2019 and received a 25-year imprisonment sentence.[2]

Wearry filed the instant § 1983 action in 2018 in the Middle District of Louisiana. His complaint alleges that Scott Perrilloux, the DA at the time, and Marlon Foster, a detective, fabricated a story that Jeffrey Ashton, on the night of the murder, saw Wearry driving Walber's car and saw him toss a bottle of Walber's cologne into a ditch. Perrilloux and Foster then allegedly coerced Ashton to testify to this entirely false story at Wearry's capital murder trial. Wearry alleged that the misdeeds of Perrilloux and Foster took place after Wearry was indicted and in preparation for that trial.

Now compare the facts before the court in *Cousin*. Simply put, the prosecutor in that case was alleged to have caused the witness to "give false trial testimony that would implicate Cousin," 325 F.3d at 632, "told him to lie about Cousin to avoid a lengthy sentence for armed robbery" for himself, *id.* at 634, and instructed the witness "what to say." *id.* The prosecutor elicited assistance from the witness's counsel. *Id.* All this was done post-indictment and while the prosecutor was preparing the witness for trial. *Id.* at 634–35.

Notwithstanding these parallel circumstances, the panel majority asserts that the prosecutors in *Wearry* did "'not simply . . . *elicit* false testimony'—they '*invented* a false narrative.'" 33 F.4th at 276 (Ho, J., dubitante). With due respect, these distinctions are the product of wordsmithing, not reality.

## B. The Law of Prosecutorial Immunity

Moving on to the law, the holding of *Cousin* is crisp and clear: If a prosecutor conducts a witness interview that is "intended to secure evidence

---

[2] "Man accused in Louisiana teen's death enters plea deal," Associated Press. March 10, 2019. https://www.tuscaloosanews.com/story/news/state/2019/03/11/man-accused-in-louisiana-teens-death-enters-plea-deal/5746510007/

that would be used in the presentation of the state's case at [trial], not to identify a suspect or establish probable cause . . . [the prosecutor] is therefore entitled to absolute immunity." 325 F.3d at 635 (footnote omitted). After discussing the principal Supreme Court cases dealing with prosecutorial immunity, the *Cousin* court concluded, "the question of absolute immunity turns on whether Cousin had been identified as a suspect at the time [the witness] was interviewed and whether the interview related to testimony to be presented at trial." *Id.* at 633. Accordingly, a prosecutor who fabricates evidence by coercing a witness to testify falsely at trial is acting in an "advocacy" capacity (not in an "investigative" role) and is entitled to absolute immunity when those activities occur post-indictment. As Judge Ho observes, commentators have interpreted *Cousin* to so hold.[3] *Wearry*, 33 F.4th at 275 (Ho, J., dubitante).

The analysis in *Cousin* flows directly from governing Supreme Court precedent. When a prosecutor is accused of misconduct, courts apply a functional test to determine whether his actions merit absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2601, 2613 (1993). The basic question is "whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity." *Id.* The test involves "the nature of the function performed, not the identity of the actor who performed it." *Id.* (citation omitted). If the action is post-indictment and in the nature of advocacy, absolute immunity applies. *Id.* at 272–73, 113 S. Ct. at 2615. If the

---

[3] *See* William S. Helfand & Ryan Cantrella, *Individual Governmental Immunities in Federal Court: The Supreme Court Strengthens and Already Potent Defense*, 47 The Advoc. (Texas) 21, 22 (2009); Margaret Z. Johns, *Reconsidering Absolute Prosecutorial Immunity*, 2005 B.Y.U. L. Rev. 53, 104 (2005); *When is prosecutor entitled to absolute immunity from civil suit for damages under 42 U.S.C.A. § 1983: post-Imbler cases*, 63 A.L.R.6th 255 (2011).

challenged violation is pre-indictment or investigatory, then the prosecutor may claim at best qualified immunity. *Id.* at 273–74, 113 S. Ct. at 2616.[4]

Quoting *Buckley* and *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976), the Fifth Circuit in *Cousin* accurately described the functional distinction:

> [P]rosecutors are *absolutely immune with respect to activities that are intimately associated with the judicial phase of the criminal process.* Conduct falling within this category is not limited only to the act of initiation itself and to conduct occurring in the courtroom, but instead *includes all actions which occur in the course of the prosecutor's role as an advocate for the State.*

*Cousin*, 325 F.3d at 631–32. (internal citations, brackets, and quotation marks omitted) (emphasis added). *Cousin* rejects any narrowing of absolute immunity that carves out of the scope of advocacy vaguely defined subcategories, such as "evidence gathering." *Wearry*, 33 F.4th at 272. Specifically, *Cousin* rejects the D.C. Circuit's holding in *Moore v. Valder*, 65 F.3d 189 (D.C. Cir. 1995), "that the collection of information for use in a prosecution is necessarily investigative rather than advocatory conduct." *Cousin*, 325 F.3d at 633 n.6. As the court explains, such a narrowing violates *Imbler*, which "explicitly recognized that '[p]reparation, both for the initiation of the criminal process and for a trial, may require the *obtaining*, reviewing, and evaluating of evidence." *Id.* (quoting *Imbler*, 424 U.S. at 431 n. 33, 96 S. Ct. at 995 n.33). To repeat, *Cousin* held that interviewing and prepping witnesses post-indictment for trial is part of advocacy under *Imbler*.

Now compare *Wearry*'s approach to the law. In spite of *Cousin's* clarity, the *Wearry* panel essentially adopts the *Moore* distinction, effectively

---

[4] *Cousin* and both *Wearry* opinions note *Buckley*'s caveat that "a determination of probable cause does not guarantee a prosecutor absolute immunity" for all actions occurring thereafter. *Buckley*, 509 U.S. at 274 n.5, 113 S. Ct. at 2616 n.5. One can readily envision circumstances post-indictment that would not constitute "advocacy" or preparation for trial. But this case embodies no such circumstance.

overruling *Cousin*. *See Wearry*, 33 F.4th at 266. The *Wearry* panel relies on *Barbera v. Smith*, 836 F.2d 96 (2d Cir. 1987), the same Second Circuit opinion that *Moore* relies upon for the holding expressly rejected by *Cousin*. *Wearry* consequently asserts that "[t]he bare labels 'advocatory' and 'investigatory,' however, are of limited utility."[5] *Wearry*, 33 F.4th at 266. The majority goes on to say, "[a] distinction more sensitive to the facts of this case is that between the advocatory function of organizing, evaluating, and presenting evidence, and the separate investigatory function of gathering or acquiring evidence." *Id.* (*citing Barbera*, 836 F.2d at 101). The majority places Perrilloux's and Foster's actions within the "investigatory" category because, they assert, fabricating evidence is analogous to gathering evidence. *Id.* at 271–72. This holding simply flouts *Cousin*.[6]

---

[5] *Cousin* aside, the *Wearry* panel's reliance on *Barbera* is itself misplaced. First, *Barbera* involves the conduct of prosecutors before a charging decision was made, and the court specifically denied absolute immunity only for such pre-charge investigatory activity. *See Barbera*, 836 F.2d at 98. The *Barbera* panel held that pre-indictment actions in that case were investigatory and not absolutely immune, but it expressed "no view" on whether the preparation of evidence that would enable the prosecutor to seek a warrant or indictment would be absolutely immune. *Id.* at 100. Second, the panel majority's use of *Barbera* implies that the Second Circuit holds that post-indictment fabrication and coercion of testimonial evidence is investigatory in nature. This is simply incorrect. The Second Circuit's precedent generally aligns with *Cousin* and applies absolute immunity to the fabrication of testimony by the prosecutor to prepare for a grand jury determination whether to indict. *See Hill v. City of New York*, 45 F.3d 653, 662 (2d Cir. 1995).

[6] Interestingly, the Ninth Circuit was more faithful to *Cousin* than our brethren:

> In *Cousin*, the Fifth Circuit held that a declaration by a witness who was allegedly coerced and intimidated into lying "eliminate[d]" any "ambiguity" about whether the prosecutor was engaged in an investigatory or quasi-judicial function when he interviewed that witness. [*Cousin*], 325 F.3d at 633. The declaration clearly showed that when the prosecutor met with the witness, "he did so to tell [the witness] how he should testify." *Id.*

*Genzler v. Longanbach*, 410 F.3d 630, 642–43 (9th Cir. 2005) (Fletcher, J.) (*Genzler* then explains that the interview fabricating evidence in *Cousin* involved absolutely immune

*Wearry* purports to draw additional support for its dichotomy between "gathering" evidence and "presenting evidence" from a series of Supreme Court and lower court cases in which absolute prosecutorial immunity was denied for activities in the former category.[7]  In each of these, however, the alleged misconduct occurred before any probable cause determination or indictment of the defendant.  None involved post-indictment witness trial preparation.

For these reasons, *Wearry* created an irreconcilable conflict with *Cousin* that this court should have addressed.[8]

Compounding the intra-circuit conflict is the conflict between *Wearry* and other circuits. *See, e.g.*, *Annappereddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021) (citing *Cousin,* fabricating evidence while coaching a witness post-indictment is advocatory, and absolutely immune); *Fields v. Wharrie*, 740 F.3d 1107, 1115 (7th Cir. 2014) ("Once prosecution begins, bifurcating a

---

advocacy, while the police-style interrogation that was the subject of *Genzler* was found to be investigatory.).

[7] *See Buckley*, 509 U.S. 259, 113 S. Ct. 2606; *Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934 (1991); *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020); *Wooten v. Roach*, 964 F.3d 395 (5th Cir. 2020); *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014); *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001).

[8] In yet another breach with the rule of orderliness, *Wearry* flatly contradicts several opinions of this court in determining that detectives can avail themselves of qualified immunity only, regardless of the functional approach to immunity dictated by the Supreme Court. *Morgan v. Chapman*, 969 F.3d 238 (5th Cir. 2020) and other Fifth Circuit cases lend strong support to Detective Foster's claim for functional immunity on the facts pled here. *See O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62 (5th Cir. 1997); *Mays v. Sudderth*, 97 F.3d 107 (5th Cir. 1996).  *But see Wearry*, 33 F.4th at 273 ("[t]he Supreme Court has made clear that police officers, even when working in concert with prosecutors, are not entitled to absolute immunity") (citing no post-*Buckley* authority).  Indeed, the majority opinion contradicts *Buckley*, which stated that "[w]hen the functions of prosecutors and detectives are the same . . . the immunity that protects them is also the same." *Buckley*, 509 U.S. at 276, 113 S. Ct. at 2617.  *Buckley*, in turn, reproduces the functional approach applied in *Butz v. Economou*, 438 U.S. 478, 511–12, 516, 98 S. Ct. 2894, 2913–14, 2916 (1978).

prosecutor's role between investigation and prosecution is no longer feasible"); *Hill v. City of New York*, 45 F.3d 653, 662–63 (2d Cir. 1995) (if prosecutor's efforts that resulted in false testimony were undertaken for presentation before a grand jury, absolute immunity would apply).

### C. Conclusion

In voting against rehearing en banc, we display a lack of understanding of the full consequences of the *Wearry* decision. Suppose a prosecutor is interviewing a coroner in preparation for trial and says, "We AGREE, DON'T WE, that the cause of death was a gunshot and not a heart attack?" After *Wearry*, a mere allegation that the prosecutor knew the cause of death was a heart attack may well defeat absolute immunity. But take it a step further. Suppose a prosecutor is preparing a witness for trial and says, with a wink of the eye or a lift of the eyebrow, "ISN'T THERE MORE you can tell us about the defendant?", prompting the witness to incriminate the defendant further. In that situation, the plausible allegation that the prosecutor invited the witness to commit perjury could lift the prosecutor's immunity. *Wearry* unabashedly holds that a prosecutor never acts in his role as advocate when "fabricating" evidence. *See* 33 F.4th at 273. Whether the fabrication occurs pre-indictment or in preparation for trial, this new categorical rule applies in full force. *Wearry*, in sum, creates difficulties that we will be sorting out over years of litigation.

Further, it undermines the principal goals of absolute prosecutorial immunity, which are to shield those who serve the public trust from "harassment by unfounded litigation." *Imbler*, 424 U.S. at 423, 96 S. Ct. at 991. As *Imbler* recognizes and carefully explains,[9] even honest prosecutors, beset by sizable dockets, limited time to prepare and strategize cases, and

---

[9] This discussion explains the Court's decision in *Imbler* to reject mere qualified immunity for prosecutorial advocacy activities in favor of common law absolute immunity.

even limited knowledge, may make questionable judgments that could be subject to second-guessing years later in civil suits. *Id.* at 426, 96 S. Ct. at 993. Additionally, *Imbler* recognizes that questions of witness veracity that pervade criminal cases can be tested in the adversarial process if the prosecutor does not shy from presenting testimony for which he could be later sued. Likewise, post-trial procedures are intended to ensure the system's fairness. *Id.* at 427, 96 S. Ct. at 993. "Th[e] [courts'] focus [on a fair trial] should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment." *Id.* And obviously, a prosecutor should not be deterred by the prospect of a damages suit from bringing to attention after conviction significant evidence of mitigation or innocence. *Id.* at n.25. Or from not prosecuting in the first place without air-tight guarantees of the perfection of evidence and testimony.

My emphasis on the goal of immunity is not a defense of deplorable and unethical prosecutorial conduct. But we must not let a bad case make bad law. And the stakes here are high for those in the business of prosecuting crime as well as for the public. It is possible that in the future the Supreme Court will reconsider the proper scope of prosecutorial immunity, or Congress will legislate on the subject. Until those events occur, however, judges' proper role is to interpret governing precedent as well as possible, and that includes abiding by our rule of orderliness for changing our circuit law by en banc review. In supporting en banc review here, I offered our court majority an opportunity to overrule *Cousin,* but they declined. In sum, we are left with a mishmash, and these issues will recur, to the detriment of clear law, of honest prosecutors, and the public interest.